[Civ. No. 1313. Third Appellate District.—March 20, 1915.]

JOHN HUMBURG, Respondent, v. THE BOARD OF POLICE AND FIRE COMMISSIONERS OF THE CITY OF SAN JOSE, et al., Appellants.

MANDAMUS—PROCEEDING FOR SALARY AND REINSTATEMENT AS POLICE OFFICER—INCUMBENT IN OFFICE—FINDINGS—INSUFFICIENCY OF EVIDENCE.—In this proceeding for a writ of *mandamus* to compel defendant to pay respondent a certain salary claimed to be due him as a police officer and to restore him to such office, it is held that the finding that there had been no incumbent in office since the suspension of the petitioner is contrary to the evidence.

ID.—OFFICER OUT OF POSSESSION OF OFFICE—WHEN NOT ENTITLED TO SALARY.—In such a case where the petitioner was not in possession of the office and performed no duties thereof during the time for which he claimed his salary but another person was in possession of the office, under claim and color of right and had performed, and was still performing all the duties thereof, under such claim and color of right, and had claimed and had been paid the salary thereof, he cannot enforce the payment of his salary until he has had his right to office adjudicated in an appropriate action to which the person in possession must be a party.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. John E. Richards and William A. Beasley, Judges.

The facts are stated in the opinion of the court.

John W. Sullivan, City Attorney, for Appellants.

J. C. Black, for Respondent.

BURNETT, J.—This is one of three cases which were tried together as they involve practically the same facts and principles. Each was a special proceeding to obtain a writ of mandate to compel defendants to pay respondent a certain salary claimed to be due him as police officer of said city and also to restore him to office as said policeman. The three cases have been argued here together and will be treated in one opinion.

Humburg was employed as a member of the police department in 1891, De Carli in 1904, and Narvaez in 1905. They

continued to discharge their duties as such until July 22, 1908, when charges were preferred against them by the chief of police for "interfering in politics" in violation of section 13 of article 10 of the city charter. They were thereupon suspended from duty without further pay. Thereafter they sought a writ of prohibition to restrain the board of police and fire commissioners from hearing or trying the charge so made against them. While this application was pending, said board, on August 26, 1908, made an order declaring that, in order to keep within the allowance made for the maintenance of the police and fire department, the police department should thereafter consist of a certain number of officers and men and designating the persons who should constitute the police force. None of the plaintiffs herein was among the list. Thereby the force was reduced from twenty-four to nineteen men. This was set up in answer to said petition for writ of prohibition and it was alleged that the petitioners therein had ceased to be members of the police force. Upon the issue so raised the superior court directed the writ to issue, declaring in the judgment that by reason of said order reorganizing said police department said police and fire commissioners had estopped themselves from "trying plaintiffs on said charges and on that ground," findings having been waived.

The proceedings herein were begun on December 24, 1909, for the payment of salaries from July 22, 1908, to December, 1909. Defendants in their answer set forth said suspension, the order of August 26 reorganizing the police department and discharging and removing petitioners therefrom, the incumbency of their successors and the fact that they have held and enjoyed such offices and alleging estoppel of further litigation of plaintiffs' claim to said offices by reason of said decision as to the writ of prohibition. The findings were all against defendants and a peremptory writ was issued by the court requiring the board of police and fire commissioners to pay the salaries of petitioners as prayed for and to restore them to office.

Among the findings of the court was this: "That it is not true that ever since the said twenty-sixth day of August, 1908, there is now or has been an incumbent in the offices claimed by the petitioner herein; that no one has been named by any order or certificate issued by the board of police and fire com-

missioners nor by the city clerk of the city of San Jose to take the place and office of plaintiff, and no one holds any color of right to the office of this plaintiff, and that it is not true that any person holds as an incumbent or enjoys or performs or now performs the duties of said office and no one asks for nor receives or claims from the public treasury of the said city of San Jose any salary of the petitioner.'' This finding seems to be entirely contrary to the evidence. In fact, there is no conflict in that regard. The evidence is undisputed that in said order reorganizing the police department the officers were named who should fill all the places. Whether the order was legal or not it certainly had the effect to put incumbents in the places formerly occupied by plaintiffs. Afterwards some additionnal places were created and filled but plaintiffs were left out. Furthermore, the uncontradicted testimony of Mr. Lahan, the secretary of the board, is as follows: ''There has never been any order made restoring the petitioners to police duty. Immediately upon the making of the order of August 26, I think the petitioner gave up property that belonged to the city that was there in his possession, I think he gave up records. Since the 22d day of July the plaintiff has not performed any services for the city of San Jose that I know of. Upon and immediately after the order of the 26th day of August, 1908, which designated the persons who should remain upon the police force, the persons named in that order, and each of them, immediately entered upon the discharge of their duties as fixed in that order. They and each of them have continued, after that time, to discharge their respective duties, except, I think, that Patrolman Walthers resigned and his place was filled about December 1, 1909, by the appointment of Mr. Charles Hertel. . . . All the persons named in the order of the 26th day of August, 1908, and Mr. Hertel, and all the persons then or since then upon the police force have regularly asked for and received their salary for the respective positions for which they claim to be appointed. From the first day of September, 1908, continuously and up to and including the first day of January, 1910, each and all of such persons have regularly performed their duties and regularly received their salaries as members of the police force. They each and all have claimed and now claim to hold their positions by virtue of a legal appointment by the board, claiming to hold upon a legal order. . . . I

knew the petitioner, D. P. Narvaez, prior to the 22nd day of July, 1908. He was a patrol driver. I am acquainted with Louis Sepulveda and Charles Pfau. Between the 22nd day of July, the date of the suspension of the plaintiff and August 26, 1908, the date of the order of removal, the petitioner did not perform any duties as patrol driver in the police department. Immediately upon the order of August 26, 1908, both Charles Pfau and Louis Sepulveda entered upon the duties of the position of patrol driver for the police department of the city of San Jose and have ever since continued and are now discharging the duties''; and he furthermore stated that they had received the salaries for such services and claimed to occupy the positions by virtue of said order of August 26, 1908. We have quoted the evidence given in the Narvaez case but it was substantially the same in the other two, Mr. Humburg having also been a patrol driver and Mr. De Carli a patrolman.

It is difficult to understand how it could be more clearly shown that there were incumbents in the positions formerly occupied by the plaintiffs herein, said incumbents claiming to be *de jure* officers and who actually received the salaries attached to the positions. We have, then, exactly the condition presented by *Black* v. *Board of Police Commissioners,* 17 Cal. App. 310, [119 Pac. 674]. Indeed, Mr. Black was removed from the same police force at the time petitioners were removed. Therein the court says: ''But in the case at bar petitioner was not in possession of the office and performed no duties thereof during the time for which he claimed his salary but another person was in possession of the office, under claim and color of right and had performed, and was still performing all the duties thereof, under such claim and color of right, and had claimed and been paid the salary thereof.

''Under such circumstances the authorities cited in our former opinion expressly and pointedly hold that one out of possession of the office and performing no duties thereof cannot enforce the payment of his salary until he has had his right to the office adjudicated in an appropriate action to which the person in possession must be a party. (See, to the same effect, Dillon on Municipal Corporations, sec. 831.)''

Respondents herein claim that *Bannnerman* v. *Boyle,* 160 Cal. 197, [116 Pac. 732], and some other cases following it hold to the contrary. But a rehearing was granted in the

Black case for the purpose of considering the Bannerman decision and upon the rehearing the appellate court for the first district said: "Unlike the case at bar, in *Bannerman* v. *Boyle,* 160 Cal. 197, [116 Pac. 732], the petitioner for the writ of mandate was in the exclusive possession of the office as a *de facto* officer, and performed all the duties of the office during the time for which he claimed his salary. At the very outset of the opinion it is stated that this was conceded." The supreme court denied a petition for hearing of the Black case in that court and the decision therein would seem to be authoritative and binding here. The other cases cited by respondents to this point are: *Barendt* v. *McCarthy,* 160 Cal. 685, [118 Pac. 228]; *Welch* v. *Ware,* 161 Cal. 646, [119 Pac. 1080]; *Ross* v. *Board of Education,* 18 Cal. App. 223, [122 Pac. 967].

The Barendt case was an injunction to restrain defendants "from removing or attempting to remove plaintiff from actual possession of his office as a member of the board of health of the city and county of San Francisco," and the vital point determined was that "pending a litigation in the nature of a *quo warranto* to determine the title to the office," plaintiff was not entitled to an injunction "restoring him to and protecting him in the actual possession of the office."

In the Welch case, the "petitioner continued to perform and discharge the duties of fire, fish and game warden for said county," and in the Ross case an office was not involved nor does it appear that another incumbent was occupying the position from which the plaintiff was ousted.

Other points are discussed by counsel, but it seems hardly necessary to consider them.

It may be said in conclusion that after the decision in the Black case, Mr. Black brought an action in *quo warranto* to try the title to the office and that action is now on appeal in the supreme court. It involves the merits of these proceedings and, no doubt, if the decision should be favorable to Black, defendants will no longer refuse to allow petitioners' claims for the salaries that may be due them. For the reason stated, the judgment is reversed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 19, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 17, 1915.