[Civ. No. 1451. Third Appellate District.—May 26, 1916.]

THE PEOPLE, etc., Respondent, v. ELTON R. BAILEY et al., Appellants.

QUO WARRANTO—RIGHT TO PUBLIC OFFICE—STATUTE OF LIMITATIONS.— A *quo warranto* proceeding prosecuted by the attorney-general for the purpose of ousting one charged with wrongfully and without authority of law exercising the powers of a public office is not simply a civil remedy, but one wherein the interests of the public are involved, and, therefore, lapse of time constitutes no bar to such a proceeding.

ID.—JUDGMENT—SCOPE OF RELIEF.—In such a proceeding the court is authorized by section 805 of the Code of Civil Procedure to provide not only for the removal of the defendant, but for the restoration to office of the relator.

ID.—RIGHT TO OFFICE OF CAPTAIN OF POLICE OF SAN JOSE—LACK OF LACHES.—In a *quo warranto* proceeding to determine the right to the office of captain of police of the city of San Jose, the relator cannot be said to be guilty of laches by reason of the lapse of time between his ouster and the bringing of the proceeding, where it is shown that in the meantime he had brought a *mandamus* proceeding to collect his salary, which was finally decided against him on appeal on the ground that before a judgment could be rendered in his favor, it would be necessary to determine his right to the office, and the present action was begun ninety days after the final disposition of such *mandamus* proceeding.

ID.—PREVIOUS JUDGMENT IN PROHIBITION PROCEEDING—INSUFFICIENT ESTOPPEL.—In such a proceeding a previous judgment rendered in a proceeding in prohibition to restrain the board of police and fire commissioners from trying the relator upon the charges preferred against him, is not sufficient as an estoppel to prevent the determination of the title to the office, where such former judgment simply recited that the board had passed an order reorganizing the police force, without further declaration that by reason of such reorganization the relator had been discharged from the force.

ID.—REMOVAL OF POLICE OFFICERS—CONSTRUCTION OF CHARTER.—The provision of the charter of the city of San Jose that a police officer can only be removed for cause, and after trial, is not in conflict with section 16 of article XX of the constitution.

ID.—OATH OF CAPTAIN OF POLICE.—A captain of police of the city of San Jose is a member of the police force of such city, and where he takes an oath at the time of his appointment to the force, it is not necessary that he should again take an oath upon promotion.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. John E. Richards, and W. A. Beasly, Judges.

The facts are stated in the opinion of the court.

H. L. Partridge, and Earl Lamb, for Appellants.

U. S. Webb, Attorney-General, J. C. Black, and Black & Clark, for Respondent.

ELLISON, J., pro tem.—This is an information in the nature of quo warranto against Elton R. Bailey to have it determined that the said Bailey has unlawfully intruded into and is unlawfully holding the position or office of captain of police of the city of San Jose, and that the relator, J. N. Black, is such captain of police and entitled to the possession of said office and to exercise the functions thereof. The city of San Jose, by permission of the court, filed a complaint in intervention. The judgment of the court was in favor of the relator and against the defendant Bailey and also against the intervener. The defendant Bailey has not appealed. The intervener brings this appeal from the judgment, and also from an order denying its motion for a new trial.

The general features of the case may be made to appear from the following outline: The relator, J. N. Black, in 1902, was appointed a member of the police force of the city of San Jose, and, in 1906, was advanced to the position of captain of police. July 22, 1908, the chief of police of said city filed charges against him with the board of police and fire commissioners (which will hereinafter be referred to as the board) alleging that he had violated certain provisions of the charter of the city and asked that he be removed from office. Upon the filing of these charges the board made an order purporting to suspend him from office and, at the same time, appointed the defendant Bailey to his place. Thereafter, on July 22, 1908, the relator began a suit in the superior court of Santa Clara County, against said board and the members thereof, to obtain a judgment prohibiting said board from trying him upon the charges so preferred against him. Upon the filing of the complaint the court made a temporary order restraining said board from trying the relator upon said charges "until the further order of the court," and

directed the defendants to appear on August 7, 1908, to show cause why they should not be absolutely "prohibited from any further proceedings in said matter."

On August 26, 1908, the board passed the following resolution or order: "That in order to keep within the allowance made for the maintenance of the Police Department of the City of San Jose, State of California, by the Mayor and Common Council of said City, commencing with September 1st, 1908, the members of said Police Department be a Chief of Police, two Captains of Police, one Detective, two Patrol Drivers and thirteen Patrolmen." At the same meeting D. W. Campbell, who had been one of the captains of police up to that time, was reappointed, and, in place of the relator, the defendant, E. R. Bailey, was appointed captain of police.

The defendant's answer to said complaint of the relator asking for a writ of prohibition was not filed until November 18, 1908, and in it was incorporated the above order accompanied by the allegation that by reason thereof the relator was "removed and discharged from and as a member of said police force of the city of San Jose."

Upon the trial of said prohibition suit the court entered a judgment permanently prohibiting the board from trying the petitioner (relator herein) upon said charges.

After the appointment of the defendant Bailey as captain of police, the relator began *mandamus* proceedings against the board to collect his salary as captain of police, on the theory that he had never been legally removed from such office and was still entitled to its emoluments. Judgment was rendered in his favor by the trial court, but, upon appeal, was reversed by the appellate court, and petition for hearing by the supreme court denied December 23, 1911.

This information in the nature of *quo warranto* was filed on the twenty-third day of March, 1912, and after a trial a judgment was rendered therein on the sixteenth day of July, 1913. In and by said judgment it was determined "that J. N. Black, since a time prior to July 22, 1908, has been and now is the duly appointed and qualified captain of police of the police department of the city of San Jose, and that he was illegally removed from said office by the orders of the board. . . . That the defendant, since the making of said orders, has wrongfully and unlawfully intruded into, usurped and held said office and still wrongfully and unlaw-

fully intrudes into, usurps and holds said office.'' That plaintiff be reinstated in said office and the defendant excluded therefrom.

From the judgment last referred to this appeal is prosecuted. Other facts will be more fully stated in the discussion of the points as they are taken up.

1. Appellant claims that the action is barred by the provisions of the statute of limitations.

In *McPhail* v. *People,* 160 Ill. 77, [52 Am. St. Rep. 306, 43 N. E. 382], it is said: ''We do not consider this *quo warranto* proceeding, prosecuted by the state's attorney, for the purpose of ousting one charged with wrongfully and without authority of law exercising the office, jurisdiction and powers of a police magistrate, as simply a civil remedy, for the protection of private rights only. Police magistrates are public officers, that are provided for in the constitution of the state; and by that instrument the judicial powers of the state are, in part, vested in them. The office of police magistrate is one in which the state and the general public have a deep interest, and the jurisdiction attached to it is uniform with that belonging to the office of justice of the peace. It is a matter of public concern to the people of the state, and against their peace and dignity, that any one should unlawfully, and without authority of right, exercise the jurisdiction, powers and functions of such office, and also a matter of interest to the state and to the general public that more persons than the law authorizes are acting as police magistrates. In this country the rule is that the attorney general or state's attorney may file the information in behalf of the people, where the interests of the general public are involved, at any time, and that, in conformity with the maxim, '*Nullum tempus occurrit regi,*' lapse of time constitutes no bar to the proceeding.'' (High on Extraordinary Legal Remedies, sec. 621; *Commonwealth* v. *Allen,* 128 Mass. 308.)

In High on Extraordinary Legal Remedies, section 621, it is said: ''In the absence of any statutory period of limitation, it is held in this country that the attorney-general may file the information in behalf of the people at any time, and that lapse of time constitutes no bar to the proceeding.''

We are of the opinion that the established rule of law, as to the statute of limitations and its bearing upon cases of this character, is correctly stated in the quotations above made and

"that the attorney general may file the information on behalf of the people *at any time,* and that lapse of time constitutes no bar to the proceeding." The law, in thus permitting the attorney-general, either upon his own information or upon the information of a private party, to file an information at any time against one who has unlawfully intruded into and is holding a public office, does not place the courts or private parties in much danger of having to deal with stale claims. The action can only be brought with the consent and permission of the attorney-general of the state, and, it is to be assumed, he will not permit the institution of such a suit, if by reason of a great lapse of time the claim has become stale, or for any other reason the state has ceased to have a present interest in it. (See *State* v. *Pawtuxet Turnpike Co.,* 8 R. I. 521, [94 Am. Dec. 123] ; *State* v. *Port of Tillamook,* 62 Or. 332, [Ann. Cas. 1914C, 483, 124 Pac. 637].)

2. The judgment in this case orders that the defendant be removed and excluded from the office, and that the relator be reinstated therein and permitted to perform its duties, and counsel for appellant, in his closing brief, says: "We wish to repeat that it is one thing to oust Bailey from office and quite a different thing to place Black therein. So far as the restoration of Black to office is concerned (leaving out of consideration for the moment the removal of Bailey), this is nothing in the world but an application for a writ of mandate. That the statute would run against this writ is unquestioned."

It was decided, in *Black* v. *Board of Police Commrs.,* 17 Cal. App. 310, 314, [119 Pac. 674] : "When there is an actual incumbent of an office, holding his position and exercising its functions under color of right, *mandamus* will not lie to a state auditor to compel him to audit the claim of another person for the salary of the office. In such case it is sufficient objection to relief by *mandamus* that a conflict of title is presented, which can be determined only by proceedings in *quo warranto,* and the auditor himself has no power to inquire into the regularity of the commission issued for the office, or to determine the disputed title." So, if counsel's point is well taken that so far as the restoration of Black is concerned this is nothing but an application for a writ of mandate; then he should be defeated regardless of the pleas of the statute of limitations, for it has already been decided that his right to the office cannot be adjudicated in such a proceeding.

The relief granted Black by this judgment is the relief that the code expressly provides may be granted in *quo warranto* proceedings, and the court is not prepared to hold that the action is not barred in so far as it is a proceeding to oust Bailey from the office, but that it is barred in so far as it reinstates Black therein.   By section 805 of the Code of Civil Procedure it is provided: ''In every such action judgment may be rendered upon the right of the defendant, and also upon the right of the party so alleged to be entitled, or only upon the right of the defendant, as justice may require.''

Until the rights of Bailey to the office had been determined adversely to his claim in *quo warranto* proceedings, Black could bring no independent action or proceeding looking solely to his restoration to it.   And the legislature very wisely provided that the rights of the one thought to be holding the office unlawfully, and of the one claiming to be entitled to it, might be adjudicated in one and the same suit.   As the only proceeding Black could institute to regain the office was an information in the nature of *quo warranto,* and as such action is not barred, the part of the judgment reinstating Black in the office is relief properly granted to him.

The cause of action set forth in the information not being barred, the court was not restrained, by any statute of limitations, from granting all the relief that the law expressly declares may be granted in such an action.

3. The case does not show laches on the part of the state or on the part of the relator barring relief.

Laches has been thus defined by our supreme court: ''While the words 'laches' and 'acquiescence' are often used as similar in meaning, the distinction in their import is both great and important.   Laches import a merely passive, while acquiescence implies active, assent; and while, when there is no statutory limitation applicable to the case, courts of equity would discourage laches, and refuse relief after great and unexplained delay, yet, when there is such a statutory limitation, they will not anticipate it, as they may when acquiescence has existed.   Laches, in fact, amount only to that inferior species of acquiescence described in the following terms by Lord Kindersley, in *Rochdale etc. Co.* v. *King,* 2 Sim., N. S., 89 [61 Eng. Reprint, 270]: 'Mere acquiescence (if by acquiescence is to be understood only abstaining from legal proceedings) is unimportant; where one party invades the right

of another, that other does not in general deprive himself of the right of seeking redress merely because he remains passive, unless, indeed, he continues inactive so long as to bring the case within the purview of the statute of limitations.' '' (*Lux* v. *Haggin*, 69 Cal. 255, 270, [10 Pac. 674].)

Nothing appears in the conduct of the relator since August, 1908, that savors at all of laches as above defined. No delay is shown in asserting his rights, and the lapse of time between his attempted ouster and the bringing of this proceeding is fully and satisfactorily explained and excused. In addition to the prohibition suit above referred to he began *mandamus* proceedings to collect his salary. This proceeding was finally decided against him on the ground, distinctly stated, that, before a judgment could be rendered in his favor for his salary, it would be necessary to determine his right to the office, and that this could not be done in a *mandumus* proceeding while another was occupying the office, performing its duties and claiming the right so to do. The present action was begun within ninety days after the final disposition of the *mandamus* proceeding. The record shows that relator has at all times been actively asserting his right to the office, and, while it was finally decided that he had mistaken his remedy, it may not be said that his conduct shows "passive assent" to the conduct of the board or city or defendant and negatives all idea of unexcused delay.

The following finding of the trial court is abundantly supported by the record: "That the relator has at all times proceeded diligently to have the title to the said office and position of captain of police determined, and that all the foregoing proceedings taken on his part were of great expense to him and were all taken in good faith under the belief that he was proceeding properly to have the title to said office and position regularly determined and tried," and effectually disposes of the claim of laches.

4. The board, in its answer to the suit brought by the relator against it to obtain a writ prohibiting it from trying him upon the charges preferred against him, pleaded as a defense that since the commencement of the action it had reduced the number of the police force, and that relator herein "was, because of the reduction in the said police force, removed and discharged from and as a member of said police force of the

city of San Jose.'' Upon the conclusion of the trial of said action findings were waived and judgment rendered prohibiting the board from at all trying the petitioner on said charges that had been preferred against him. Said judgment contained, in the recitals thereof, the following: ''Since the issuance of said interlocutory writ said board have on the 26th day of August, 1908, passed an order reorganizing the police force of the city of San Jose, and thereby estopping themselves from trying plaintiff on said charges, and on that ground. It is ordered,'' etc.

As to the effect of this recital and judgment: Counsel for appellant takes the position that it decides that Black was properly and legally removed from the police force by the order of August 26, 1908, and was no longer a member thereof, and that said judgment is a final determination of that question and estops the parties from investigating it in this action; while counsel for respondent claims ''The judgment in the prohibition case finally and conclusively determined relator's title to the office of captain of police.'' Is either of these positions tenable?

A judgment rendered in another action between the same parties may, when pleaded, be viewed in two aspects: 1. As ''a final determination of the rights of the parties in the action or proceeding'' (Code Civ. Proc., sec. 577), and, 2. As an adjudication of certain questions that may have been put in issue, tried and decided. The judgment in this case was a final adjudication that the board had no right to and should not try the relator upon the charges that had been presented against him. We assume that it is pleaded in this action by the appellant for the purpose of showing that in the former action the mixed question of law and fact of whether respondent had been legally removed from the office was put in issue; was tried and decided against J. N. Black, the respondent in this action; that, having thus once been put in issue in an action between the same parties, the question cannot again be litigated between them.

The law upon this matter is clearly stated in *Green* v. *Thornton*, 130 Cal. 482, [62 Pac. 750], wherein (quoting from *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1 [42 L. Ed. 355, 18 Sup. Ct. Rep. 18]), it is said: ''The general principle announced in numerous cases in this court is that

the right, question, or fact, definitely put in issue and directly determined by the court of competent jurisdiction as a ground of recovery, cannot be contested in a subsequent suit between the same parties or their privies.''

Section 1911 of the Code of Civil Procedure provides: ''That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto.''

In *Russell* v. *Place*, 94 U. S. 606, [24 L. Ed. 214], it is said: ''It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered—the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. If upon the face of the record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered in evidence.'' ''An estoppel cannot be created by mere argument.'' (Freeman on Judgments, sec. 258.)

With these settled principles of law before us, we proceed to analyze the situation a little more closely.

1. A finding by the court that the board had removed the relator from office was not necessary in order to render the judgment that was rendered. ''It is allowable to reason back from a judgment to the basis on which it stands, upon the obvious principle that where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally conclusive and indisputable with the conclusion. But such an inference must be inevitable, or it cannot be drawn.'' (Freeman on Judgments, sec. 257.) The judg-

ment could well have been rendered on a view taken by the
trial judge that the charges were insufficient in substance or
in legal effect to justify a trial. It could have founded its
judgment on the theory entertained by it that the affidavit
filed by petitioner stated grounds for relief, and that its alle-
gations had been established by the evidence. Hence an im-
plied finding by the court that the defendant had been re-
moved from office was not necessary to the judgment. If it
was, then it follows that the complaint did not state facts en-
titling plaintiff to relief by way of a judgment of prohibition
because it contained no reference to the order of August 26,
1908. Nor does the recital in the judgment show that the
court determined, either expressly or impliedly, that the re-
lator had been removed and was no longer an officer of the
municipality. The judgment recites that the board, "on
August 26, 1908, passed an order reorganizing the police force
of the city of San Jose." This is the extent of the recital as·
to what was done. For the former judgment to be an estoppel
upon the question as to whether the relator has been legally
removed from his office, the court, in addition to the above
recital, should have found that by reason of said reorganiza-
tion by the board the relator has been discharged from the
police force, that the acts of the board legally had that effect,
and that he was no longer a member thereof. A mere recital
or finding that the police force had been reorganized falls
far short of a finding that the relator had been legally dis-
missed from the police force. In said recital the court also
states that by its acts the board had estopped "themselves
from trying plaintiff on said charge," and this is claimed as
a final adjudication that he was no longer a member of the
force.

That the court did not intend by the use of the word "es-
topped" to find that relator was no longer a member of the
force is apparent from the whole situation, and from the judg-
ment of prohibition that followed. The words are more in
the nature of a reason advanced by the court why relator
should have the judgment prayed for and which was awarded
to him. "The effect of a judgment as *res adjudicata* is not
limited or enlarged by the reasons given by the court for its
rendition." (*Davis* v. *Millaudon*, 17 La. Ann. 97, [87 Am.
Dec. 517].) "With the process of reasoning by which the
court reached its conclusion we have nothing to do." (*In re*

*Kingsley*, 93 Cal. 576, [29 Pac. 244].) We conclude that the relator is not estopped by said judgment from prosecuting this action.

5. Counsel calls attention to section 16 of article XX of the constitution wherein it is provided that if the term of an officer is not provided for in the constitution it may be declared by law, and if not so declared he shall hold his position at the pleasure of the appointing power, and argues that if the charter did not fix the term of a captain of police by stating the definite number of years of such term (and this the charter does not do), then, under the above constitutional provision, he would hold at the pleasure of the board and it could discharge him at any time; and that the provision in the charter that he could only be removed for cause, and after trial, is in conflict with said constitutional provision.

The charter of the city of San Jose is not a law passed by the municipality. It is a law of the state, having the same force and effect as a law directly enacted by the legislature, and must be "upheld unless it is clearly shown to have been, at the time of its enactment, repugnant to and inconsistent with the then existing fundamental law." (*Stern* v. *City Council*, 25 Cal. App. 685, [145 Pac. 167].) When the charter of the city of San Jose became a law, subdivision 3 of section 8½ of article XI of the constitution provided that it should be competent in all charters framed under the authority of section 8, article XI, to provide "For the constitution, regulation, compensation and government . . . of the municipal police force." This language is broad enough to embrace provisions in a charter fixing the personal qualifications of the members of the police force, the time they may serve, and the manner and conditions of their removal, and, if express authority from the constitution is needed for the provision in the charter, that members of the police force can only be removed for cause and after trial, it is found in the above provision.

6. The point is made that it does not appear that relator ever had a commission issued to him "as captain of police and never subscribed or took an oath of office as such."

A captain of police is a member of the police force of the city. (Sec. 6, art. X, of the charter, Stats. 1897, p. 625.) At the time of his appointment to the police force of the city he took and subscribed the requisite oath. It was not contem-

plated that, with every change in his position on the force, by promotion or otherwise, he should again take and subscribe an oath as such member of the police force.

7. The charter of the city of San Jose provides that officers of the police force shall retain their positions during good behavior and efficiency, and shall not be removed except for cause, and provides that in any case for removal for cause there shall be a trial had after notice. Additionally to show that the relator could only be removed after a trial had and an order of removal made, we quote the following from the opinion in *Bannerman* v. *Boyle*, 160 Cal. 205: "The doctrine that an officer can be removed only upon notice, and after a hearing, where the tenure of his office is during good behavior, or until removal for cause, or for a definite term, subject to be removed for cause, may be regarded as settled law in this country." It is conceded that the relator was never thus removed.

8. The order of suspension made upon the filing of the charges against the relator was only temporary in character, and its force and effect ended with the final judgment of the court prohibiting the board from trying him thereon.

9. As to his removal from office by virtue of the purported order of the board reducing the number of the police force, the court, upon abundant evidence, made the following finding: "That the aforesaid action of the board and the adoption of the aforesaid orders and resolutions were all wholly in bad faith and solely for the purpose of ousting the relator from his said office and position and depriving him thereof without a hearing or trial of any kind and for the purpose of giving to Elton R. Bailey the office and position of the relator." That said orders were not a reorganization in any particular, so far as covered captains of police; that it intended all the time that the department should consist of two captains of police with precisely the same duties of office that theretofore existed, and such orders did not change or modify the office of captain of police, but were made for the purpose of evading and avoiding the requirements of the charter, which accorded to relator the right to hold his office until accusations were made against him and regularly tried.

As the findings of the court are supported by the evidence, the judgment by the findings, and as no reversible error ap-

pears in the record, it follows that the judgment and order should be and they are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 25, 1916.