[Civ. No. 5427. Second Appellate District, Division Two.—April 1, 1927.]

## GEORGE B. NORMAN, Appellant, v. PRESCOTT F. COGSWELL et al., Respondents.

[1] CERTIORARI—JUDICIAL PROCEEDINGS.—The writ of *certiorari* will not lie except to review proceedings of a judicial or *quasi*-judicial character.

[2] FIRE PROTECTION DISTRICT—FUNCTIONS OF SUPERVISORS — JUDICIAL PROCEEDINGS.—In the formation of a fire protection district, the determination of the board of supervisors that a designated newspaper is the one most likely to give notice to the electors is a *quasi*-judicial finding; and its determination that a proper notice was given and that a majority of the votes were cast in favor of the creation of the district involves a consideration and weighing of evidence, and is judicial.

[3] ID.—SUFFICIENCY OF NOTICE—PUBLICATION IN WRONG PAPER—CERTIORARI.—In the formation of a fire protection district, where the notice of the election is not published in the newspaper designated by the board of supervisors, and by it deemed most likely to give notice to the electors, such publication is not sufficient; and the determination by the board of supervisors that proper notice had been given may be reviewed on *certiorari*.

(1) 11 C. J., p. 121, n. 51.    (2) 11 C. J., p. 122, n. 60.

APPEAL from a judgment of the Superior Court of Los Angeles County. Hartley Shaw, Judge. Reversed.

The facts are stated in the opinion of the court.

1. Questions reviewable on *certiorari,* note, 40 Am. St. Rep. 29. See, also, 4 Cal. Jur. 1065; 5 R. C. L. 258.
3. See 4 Cal. Jur. 1074.

Lorrin Andrews for Appellant.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondents.

THOMPSON, J.—A writ of *certiorari* was issued by the superior court of Los Angeles County, directed to the board of supervisors of that county for the purpose of reviewing the proceedings leading up to the creation of the "Moneta County Fire Protection District of Los Angeles County" under the provisions of "An Act to provide for the formation, management and dissolution of county fire protection districts, and annexations thereto, setting forth the powers of such districts and providing for levying and collecting taxes on property in such districts to defray the expense thereof" (Hillyer's Consolidated Supplement, pt. 2, p. 2707). From the return to the writ it appears that a petition was filed for the establishment of the district, and that the board of supervisors determined that it should be formed. Notice of the time and place fixed for "a hearing of the matter of the formation" was published, as required, in the "Gardena Reporter," which newspaper was deemed by the board most likely to give notice to the inhabitants of the territory embraced in the resolution, of the proposed formation of the district. Written objections by fifty-nine freeholders were presented and heard and thereafter the board of supervisors decided to establish the district. The act provides that where objections are filed by twenty-five or more freeholders the board of supervisors must submit its decision to an election called by it for that purpose and that it must give notice of the "resolution ordering the holding of such election" by publication "in the newspaper of general circulation in said proposed district deemed by said board to be the most likely to give notice to the electors thereof of such proposed election." In this instance the board determined that the "Moneta Observer" was the paper most likely to give notice and ordered the notice to be published accordingly. The notice, however, was not published in this last-named newspaper, but was published in the "Gardena Reporter." The election was held and subsequently the board, in accordance with the provisions of the act did "enter a finding to that effect upon its minutes" in which

it declared that ninety-four votes were cast in favor of and eighty-five votes were cast against the creation of the district. The district was declared established. The judgment of the superior court affirmed the action of the board of supervisors and this appeal is from that judgment.

The appellant maintains that the board of supervisors was exercising *quasi*-judicial functions in all of the steps taken by it up to and including its final determination that the votes cast were in favor of the creation of the district; that the publication of the notice of election in a newspaper other than the one designated was an insufficient notice; and that due notice is a prerequisite to the exercise of its jurisdiction thereafter. The respondents' answer is that the things done by the board up to the point where, after hearing, it determined that a district should be formed, are judicial in character and that all of the things done by the board thereafter are only ministerial. [1] It is conceded by both counsel that the writ of *certiorari* will not lie except to review proceedings of a judicial or *quasi*-judicial character, hence it is unnecessary for us to do more than refer to the case of *People* v. *Board of Supervisors*, 122 Cal. 421 [55 Pac. 780], for a statement of that rule.

[2] The main difficulty in this case is to determine whether or not the giving of the notice involved a *quasi*-judicial act or was a necessary prerequisite to the performance of some *quasi*-judicial act. It can hardly be denied that the determination that the "Moneta Observer" was the newspaper most likely to give notice to the electors was a *quasi*-judicial finding. We may assume, for the purposes of this case that the establishment of the boundaries was a legislative act; that the calling of the election and the canvass of the votes were purely ministerial; nevertheless, it remained for the board to do something beyond the mere canvassing of the returns before the board could, in the words of the act, "enter a finding" to the effect that a majority of votes had been cast at the election in favor of the creation of a district; it must upon proper evidence, such, for example, as the proof of publication by affidavit of the publisher, decide that a proper notice had been given in the newspaper which it had already decided was the most likely to give notice to the electors. This determination cannot be

said to be ministerial, but involves a consideration and weighing of testimony. It is judicial.

We find nothing in the case relied upon most strongly by the respondents (*Borchard* v. *Supervisors,* 144 Cal. 10 [77 Pac. 708]) to conflict with these views. An examination of the statute involved in that action shows that the notice of election which it is provided the supervisors "shall" give, must be published in a newspaper published in the boundaries of the proposed corporation or "shall" be posted in four public places therein. There is no provision in the act there involved that it shall be in the newspaper *deemed* (italics ours) by the supervisors most likely to give notice to the electors. Perhaps more important than this is the fact that in the Borchard case the court found that the notice had been properly given. And aside from this, we also find that the organization of a district such as that in question here differs essentially from the organization of a municipal corporation. A fire protection district compares more logically with an assessment district for a certain definite and particular improvement. The formation of the district constitutes the steps preliminary to the assessment for the improvement, which in this case is fire protection organization and equipment. (See *Pasadena Park Improvement Co.* v. *Lelande,* 175 Cal. 511 [166 Pac. 341].) We may fairly and reasonably assume that assessments will be levied for the purposes of the district by the board of supervisors and all preliminary steps theretofore are requisite to the jurisdiction of the board to make such levy. This fact, we think, is of extreme importance, for as was said in *Imperial Water Co.* v. *Supervisors,* 162 Cal. 14 [120 Pac. 780], quoting from *Robinson* v. *Board,* 16 Cal. 208, "It is sufficient if they" (the board) "are invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially whatever may be their public character." The Imperial Water Company case also recites proceedings very similar to those here, in these words: "The proceeding provided for by the act comes clearly within these definitions. Section 1 designates the persons who may initiate the proceeding before the board. (Stats. 1911, p. 509.) Section 2 provides that such proceeding shall be begun by a petition presented to the board, signed by the required number of persons, repre-

senting the majority in value of the land, and setting forth the boundaries of the proposed district and the source of the water supply. (Stats. 1911, p. 509.) The petition, together with a notice of the time of the meeting at which it will be presented to the board, must then be published for two weeks. At that time supervisors must hear the same. They may change the boundaries as deemed advisable by including or excluding territory therefrom, but they must not exclude land irrigable from the proposed source, or include land which will not be benefited by irrigation therefrom. Any person whose lands may be irrigated from the proposed source may, in the discretion of the board, have such lands included within the district. The board must hear all relevant and competent evidence offered, and thereupon determine whether or not the petition is signed by a majority in number of the holders of lands within the proposed district susceptible of irrigation from the same source or system, and whether or not the lands held by such signers represent a majority in value of such lands within the district. (Sec. 3.) They must also determine the genuineness of the signatures to the petition and the sufficiency of the publication made. If all these facts are determined in favor of the petitioners, the board may then make an order fixing the boundaries of the district and *calling an election* to submit to the voters within the territory thus fixed the question whether the same shall be organized as a district under the law. (Sec. 6.) If the election is favorable the board shall then *make an order declaring the territory organized as an irrigation district."* (Italics ours.) And then says: "This scheme presents all the usual elements of a judicial proceeding, the notice, the hearing, the taking of evidence, *and the judgment.* The privilege of using a portion of the water from a common source upon a particular tract of land is one which directly and materially affects the value of the land, and is clearly a property right of great value. *The right to be excluded from the burdens which the construction and operation of the water-works will impose upon property within such a district is also a property right.* By this act the legislature has committed to the board of supervisors the power to determine and dispose of these rights. The decision of such a matter, after notice and a hearing, is clearly the exercise of a judicial function. The circumstance

that the facts are to be established as a foundation upon which the subsequent legislative act of creating a public corporation is to be based, does not destroy the judicial character of the determination nor take away the fact that it does affect private property injuriously or beneficially as the case may be. It is therefore a proceeding subject to be reviewed in *certiorari.*" (Italics ours.) It will be noted that the judgment mentioned in the last-quoted language of this case refers to the final order entered after election. And so in this case no final judgment could be entered until after the election. In the case of *Broyles* v. *Mahon,* 72 Cal. App. 484 [237 Pac. 763], which involved the creation of a high school district, the court says, "It may be conceded that˄the creation of the proposed Chico high school district, as it will be after the annexation of the common school districts, is a legislative act; but it appears to be the law that where the legislature delegates legislative power to a local board and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such board, after notice and hearing to interested parties, the proceeding thus authorized is of a judicial character which may be reviewed by writ of review. (*Imperial Water Co.* v. *Supervisors,* 162 Cal. 14 [120 Pac. 780] ; 4 Cal. Jur. 1074, and citations, note 19.)"

[3] Having determined that the particular thing complained of in the instant case is subject to be reviewed in a *certiorari* proceeding, the next and final question is whether the publication of the notice was sufficient. We think it was not. It has been held that the publication of notice in a newspaper other than the one designated is equivalent to no notice at all. (*Chase* v. *Treasurer of Los Angeles et al.,* 122 Cal. 540 [55 Pac. 414]. See, also, *Stumpf* v. *Board of Supervisors,* 131 Cal. 364 [82 Am. St. Rep. 350, 63 Pac. 663].) In this instance it was not only not published in the paper designated, but was not published in the newspaper deemed by the board most likely to give notice to the electors.

Judgment reversed.

Works, P. J., and Craig, J., concurred.