[Civ. No. 2358. Fourth Appellate District.—December 8, 1939.]

Dr. GERALD K. NIDER, Petitioner, v. THE CITY COMMISSION OF THE CITY OF FRESNO et al., Respondents.

Rae B. Carter for Petitioner.

C. M. Ozias, City Attorney, for Respondents.

MARKS, J.—This is an original proceeding for writ of review and writ of mandate involving an order made after

trial of petitioner by the City Commission of the City of Fresno (which we will hereafter refer to as the Commission) on charges preferred against him by the mayor of that city. Other phases of this matter have been before this court. (*Nider* v. *Homan,* 32 Cal. App. (2d) 11 [89 Pac. (2d) 136]; *Nider* v. *Homan,* 32 Cal. App. (2d) 21 [89 Pac. (2d) 135].) The facts set forth in those opinions will not be repeated here.

After the judgments in those cases became final the Commission promptly set for trial the charges against petitioner. The trial resulted in the sustaining of one of the several charges of misconduct and the overruling of all the others, which, in the opinion of the commissioners were not sustained by the evidence. It will be necessary for us to consider only the charge which was sustained and which resulted in petitioner's being removed from his office. That charge is as follows:

"You, as City Physician of Fresno, have failed to maintain the professional confidence, as a physician and surgeon, of a considerable number of the employees and officers of the City of Fresno to such an extent that many of them have declared that they will not submit to your treatment as a physician and surgeon in the event of injury or other disability."

The finding of the Commission on this charge is as follows:

"The Commission finds, by a unanimous vote that the first reason for dismissal has been sustained. However, we further find, in connection with said reason for dismissal, that the competency and ability of Dr. Nider as a physician and surgeon, has not been impeached."

We will first consider the cause from the point of view of a writ of review reserving the question of the writ of mandate for separate consideration in the latter part of this opinion.

The several grounds of attack on the jurisdiction of the Commission to make its order sustaining the removal of petitioner may be consolidated and restated as follows: (1) That there is no evidence in the record supporting the charge and the order sustaining the removal of petitioner by the mayor of Fresno; (2) that the finding "that the competency and ability of Dr. Nider as a physician and surgeon, has not been impeached" is a definite and particular finding of the one material and important fact of the case and destroys the effect

of the very general finding supporting his removal as it is inconsistent with it; (3) that the Commission lost jurisdiction of the matter by reason of lapse of time and that petitioner was automatically reinstated in his office because of lapse of time; (4) that the resolution of the Commission shows on its face that the mayor voted for its passage which this court held he had no right to do. (*Nider* v. *Homan*, 32 Cal. App. (2d) 11 [89 Pac. (2d) 136].)

It is well settled that in a proceeding of this kind, reviewing the order of a City Commission made in a *quasi*-judicial capacity, that the order under attack can only be vacated if it be in excess of the jurisdiction of the Commission or if the Commission lacked jurisdiction to make it. We are only concerned with the question of jurisdiction. We are not concerned with mere errors in the exercise of that jurisdiction.

It is admitted, and correctly so, that the charter of the city of Fresno vests in the Commission jurisdiction to conduct the hearing, to take evidence on the charges filed and on the issues presented by the answer of petitioner and to reach its conclusion after the hearing is completed. It is well settled that under such circumstances it can be said that the Commission exceeded its jurisdiction in making its order only if there be an entire lack of any evidence presented which sustained its conclusions. (*Garvin* v. *Chambers*, 195 Cal. 212 [232 Pac. 696].)

Under section 22 of article 3 of the charter (Stats. 1921, p. 1832) charges against employees within the civil service must be tried by the civil service board. That section contains the following:

"The Civil Service Board may regulate the conduct of said hearing so that the same will not be unnecessarily prolonged, and may confine witnesses in their testimony to the material matters under consideration, and shall not be bound by the technical rules of evidence and pleading, . . . "

The same section contains the following: "No officer or employee of the city may be removed except for reasons that will promote the efficiency of the public service; . . . It is not the intention of the provisions of this section to warrant the retention in the city service of any inefficient, incapacitated, disgruntled, or insubordinate officer or employee, and the

Civil Service Board and City Commission in their decisions, while protecting officers and employees from improper removals, shall have due regard for the interests of the good administration of the city's business.''

If charges be filed against a person in the exempted service of the city, which classification included petitioner, they must be tried by the Commission under similar rules and procedure as those governing trials by the civil service board. (Sec. 22, art. 3, Charter.)

The record discloses that a large number of employees of the city of Fresno appeared and testified. Practically all of those called by the city testified that they had lost all confidence in petitioner's professional ability and did not want to be treated by him for any injury or disease suffered or contracted in line of duty; that numerous other employees entertained like opinions. There is other evidence to the effect that petitioner was not diligent in detecting malingerers who desired to lay a foundation for retirement on pensions by making unfounded claims of being sick; that he reported employees sick and unfit for duty and that some of them, when supposedly sick, went hunting or fishing or to picture shows or other places of amusement. Another group of employees who were called as witnesses by petitioner were equally positive in expressing their views to the effect that petitioner was a very competent physician and surgeon and had rendered excellent service in performing his duties as city physician and was entirely satisfactory to them.

Petitioner complains bitterly of rulings of the Commission on objections to offered evidence. He urges that practically all of the evidence introduced against him was hearsay or consisted of laymen's opinions on medical or surgical matters upon which the witnesses had no right to speak and which was utterly incompetent for any purpose; that it cannot be considered as evidence supporting the questioned order.

It must be admitted that respondents went too far afield in the evidence which they permitted to be introduced. To illustrate, a traffic officer was permitted to testify concerning the reduction of a fractured wrist early in 1939. Petitioner was not then city physician, having been removed from his office several months earlier. He happened to be at the hospital when the witness was treated and was re-

quested by the acting city physician to assist in reducing the rather difficult fracture. Petitioner only assisted in an emergency and did not have charge of the case. Such evidence should have been excluded.

However, there is other evidence in the record, some of it admitted without objection, that shows that petitioner had not discovered malingerers; that he had lost the confidence of a very considerable number of the employees of the city of Fresno to such an extent that they objected to his treating them; that some of that number objected to petitioner to the further extent that they would not permit him to administer to them at all.

Petitioner's argument on this phase of the case may be reduced to this: That this evidence is not sufficient to support the removal order, there being no evidence of any incompetency or neglect of any duty on his part. In other words, petitioner argues that he can only be removed for incompetence or for neglect of his duties and not because of opinions or prejudices on the part of some of those who must become his patients because of his office and their employment by the city. Petitioner's argument on this phase of the case overlooks the provisions of the charter that on these hearings the Commission "shall not be bound by the technical rules of evidence and pleading".

The duties of the city physician are thus defined in an ordinance of the city of Fresno:

"It shall be the duty of such city physician to give medical and surgical attention to sick or injured persons brought to the city emergency and to all sick or injured members of the police, fire or other departments of said city who shall become sick or injured as a result of the discharge of their official duties."

The city physician is appointed by the commissioner of public safety and welfare who is *ex-officio* mayor and who is, generally speaking, responsible for the efficient performance of their duties by those coming under his jurisdiction.

The charter vests "the legislative power of the city and general administrative control of the city government" in the city commission. (Charter, art. II, sec. 6.) It was clearly the intention of the framers of the charter to make the commissioners responsible for the proper administration

of the municipality's affairs. To accomplish those ends they should be vested with broad discretionary powers which should not be curtailed by the courts except in cases of fraud, oppression or manifest abuse of discretion.

It must be admitted that a study of the record before us leaves the distinct impression that the commissioners at least went to the limit of a sound discretion in sustaining the removal of petitioner on the ground which they chose, to support the order of the mayor. That they went beyond that limit is a conclusion we cannot reach.

As we have seen, one of the duties of the city physician was to care for city employees who became sick or were injured in the performance of their duties. It is well known that one important element in the successful treatment of the sick or injured is the confidence of the patient in the physician administering to him. A lack of that confidence may well interfere with the success of the treatment and render the physician inefficient in a particular case regardless of his general professional qualifications, training and skill in his profession. To retain such a city physician in office might impair instead of "promote the efficiency of the public service". If a large number of the city employees had lost confidence in petitioner, it might reasonably be concluded that such lack of confidence would render him inefficient in treating them. The charter particularly provides that it is not intended to compel the retention in the city service of an inefficient officer or employee. There is evidence of loss of confidence in petitioner by a considerable number of employees. The weight and sufficiency of that evidence was a matter to be decided by the commissioners. With this evidence before them we cannot say that there was an entire lack of any evidence to support the challenged order which in effect finds petitioner to be an "inefficient" but not an "incompetent" officer. Further, there is evidence that petitioner was not diligent in discovering malingerers who claimed to be sick and at the same time were able to go hunting and fishing and engage in other recreations. This is also evidence bearing on the efficiency of petitioner and gives further support to the order of the Commission.

As there was evidence before the Commission bearing upon the question of the inefficiency of petitioner to perform the duties of his office the Commission had jurisdic-

tion to pass on the weight and sufficiency of that evidence and make a finding upon it. We can be concerned only with the jurisdiction of the Commission. We are not concerned with errors in its rulings. As there was evidence to support the order there was jurisdiction to make it. Therefore, we must conclude that the Commission had jurisdiction to enter an order at the conclusion of the hearing. Because we might have reached a conclusion on the weight of the evidence contrary to that reached by the commissioners does not affect the question of jurisdiction. As has been frequently remarked, jurisdiction includes the power to decide a case wrongly as well as rightly.

What we have already said disposes of the second contention of petitioner. We believe it should be clear that a man may be, as is established by a preponderance of the evidence concerning petitioner, a competent, able, skilful and successful physician and surgeon in his general practice and still may be inefficient and as a result of such inefficiency, incompetent to fill a particular position where he is required to treat a certain group many of whom have lost confidence in his ability.

Petitioner urges that because the charges against him were not tried within thirty days the Commission lost jurisdiction over the case and could not reinstate him. This argument is based on rules adopted by the civil service board under powers given that body by the charter. By their terms those rules are made to apply to employees in the classified service. Petitioner was not in the classified but in the exempted service. Further, if it be assumed that those rules might be applicable here, we believe they are directory only in their applicability to this case and to petitioner in the exempted service. There has been much litigation in this matter. (*Nider* v. *Homan,* 32 Cal. App. (2d) 11 [89 Pac. (2d) 136] ; *Nider* v. *Homan,* 32 Cal. App. (2d) 21 [89 Pac. (2d) 135].) When the judgments in those cases became final petitioner was given a prompt trial. In view of all the facts he should not be permitted to urge an undue delay in bringing his cause to trial.

Lastly it is urged that the resolution sustaining the charge against petitioner was passed by the affirmative vote of all the commissioners, including Mayor Homan. This argument is based on the language used in the resolution that

it was found "by a unanimous vote . . . ". This clearly means by the unanimous vote of those participating in the hearing. It is admitted that Homan did not sit during the trial and the certificate of the city clerk attached to the resolution shows that he did not vote on the resolution. Further, the resolution could have been passed by the affirmative vote of three members of the Commission, and four members, not including Homan, voted for its passage. If Homan had voted for the resolution it would have constituted error but could not have affected the jurisdiction of the Commission as his vote was not necessary for the passage of the resolution. (*Nider* v. *Homan,* 32 Cal. App. (2d) 21 [89 Pac. (2d) 135] ; *Nider* v. *Homan,* 32 Cal. App. (2d) 11 [89 Pac. (2d) 136].)

We will now consider the cause from the point of view of its being a proceeding to obtain a peremptory writ of mandate to require the Commission to vacate its order sustaining the charge against petitioner. We have already sufficiently detailed the facts of the case together with the grounds of attack on the order and the applicable provisions of the charter and ordinance so that there need be no repetition of those phases of the case which are identical under both the petition for a writ of review and for a writ of mandate.

*Mandamus* is an extraordinary remedy to be used where the law furnishes no other remedy and where to promote the ends of justice one should be afforded. It may be used under those circumstances to compel the performance of a duty which the law especially enjoins or to compel the admission of a person into the use and enjoyment of an office to which he is entitled and from which he is unlawfully excluded. (Sec. 1085, Code Civ. Proc.) Very generally speaking, *mandamus* may be invoked to compel an inferior tribunal to act within its jurisdiction while a writ of review lies to annul an order of a court made in excess of its jurisdiction. (*Golden Gate Tile Co.* v. *Superior Court,* 159 Cal. 474 [114 Pac. 978].) A writ of mandate is not usually used to set aside an order of a judicial tribunal. Ordinarily it is not the proper remedy if the challenged order is in excess of jurisdiction and is equally inappropriate if the order is merely erroneous. (*O'Neill* v. *Reynolds,* 116 Cal. 264 [48 Pac. 57].)

It is established that *mandamus* will only issue to enforce the performance of a clear legal duty but not to control an action involving discretion on the part of a board. (*Valley Motor Lines* v. *Riley*, 22 Cal. App. (2d) 233 [70 Pac. (2d) 672] ; *Lambert* v. *Fenelon*, 25 Cal. App. (2d) 142 [77 Pac. (2d) 268] ; *Nider* v. *Homan*, 32 Cal. App. (2d) 11 [89 Pac. (2d) 136].)

It has been held that *mandamus* is not a proper remedy by which a person out of office, but claiming the right to an office filled by another under claim of right, may compel the payment of the salary to himself or try the title to the office; that the incumbent is a necessary party. (*Black* v. *Board of Police Commrs.*, 17 Cal. App. 310 [119 Pac. 674] ; *Humburg* v. *Board of Police Commrs.*, 27 Cal. App. 6 [148 Pac. 802] ; *People* v. *Bailey*, 30 Cal. App. 581 [158 Pac. 1036].)

When we apply the foregoing rules to the facts before us we are forced to the conclusion that *mandamus* is not the proper remedy to be invoked in this case, for two reasons: (1) Because the law furnishes petitioner with another remedy (writ of review), and (2) because the action sought to be controlled did not spring from a duty imposed by law but rather because it involved the exercise of a discretion on the part of the commissioners in deciding a case on the evidence introduced.

The writ of review is the proper remedy to be employed to review the order of the Commission. Such a writ may be issued by a court of general jurisdiction to review the order of an inferior tribunal, board or officer exercising judicial functions made in excess of the jurisdiction of such tribunal, board or officer when acting in a judicial or *quasi*-judicial capacity and when there is neither an appeal from such order nor other plain, speedy and adequate remedy provided by law. (Sec. 1068, Code Civ. Proc.; 4 Cal. Jur. 1065, sec. 35 et seq., and cases cited.)

In *Nider* v. *Homan*, 32 Cal. App. (2d) 11 [89 Pac. (2d) 136], this court said:

"It is settled in California that local boards (not boards of state wide authority) may act in a judicial capacity as a *quasi*-judicial body. (*Wulzen* v. *Board of Supervisors*, 101 Cal. 15 [35 Pac. 353, 40 Am. St. Rep. 17] ; *Croly* v. *City of Sacramento*, 119 Cal. 229 [51 Pac. 323] ; *Imperial Water Co.* v. *Board of Supervisors*, 162 Cal. 14 [120 Pac. 780] ; *Rigdon*

v. *Common Council,* 30 Cal. App. 107 [157 Pac. 513] ; *Norman* v. *Cogswell,* 82 Cal. App. 159 [255 Pac. 251] ; *Bayside Land Co.* v. *Dolley,* 103 Cal. App. 253 [284 Pac. 479].) In the Croly case it was held that when a board of trustees sits at the hearing of charges against a city officer the board is acting in a *quasi*-judicial capacity. (*Garvin* v. *Chambers,* 195 Cal. 212 [232 Pac. 696], is to the same effect.)

"In *Quinchard* v. *Board of Trustees,* 113 Cal. 664 [45 Pac. 856], it is said:

" 'The distinction between a judicial and a legislative act was pointed out by Field, J., in Sinking-Fund Cases, 99 U. S. 727, 761 [25 L. Ed. 504], as follows: "The one determines what the law is, what the rights of the parties are with reference to transactions already had; the other prescribes what the law shall be in future cases arising under it." '

"In *Imperial Water Co.* v. *Board of Supervisors, supra,* it was said:

" 'It does not follow, however, that where the legislature delegates such power to a local board and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such board, after a notice and hearing to parties interested, that the proceeding thus authorized is not of a judicial character. Although such boards do not have the character of an ordinary court of law or equity, they frequently are required to exercise judicial functions in the course of the duties enjoined upon them. In *Robinson* v. *Board of Supervisors,* 16 Cal. 208, the court says: "It is sufficient if they are invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially whatever may be their public character." There are many decisions to the same effect. (*People* v. *Supervisors,* 8 Cal. 58, 61; *People* v. *Supervisors,* 10 Cal. 344; *Eldorado County* v. *Elstner,* 18 Cal. 144, 149; *Murray* v. *Board of Supervisors,* 23 Cal. 492, 494; *Miller* v. *Board of Supervisors,* 25 Cal. 93, 97; *Keys* v. *Marin Co.,* 42 Cal. 252, 254; *Smith* v. *Strother,* 68 Cal. 194, 196 [8 Pac. 852] ; *Wulzen* v. *Board of Supervisors,* 101 Cal. 15, 24 [40 Am. St. Rep. 17, 35 Pac. 353].) Where in a proceeding before such a board a public notice is required to be given, and a hearing of objections or protests to the contemplated action is provided for, and the order to be made thereon is one which affects the property or rights

of the citizen, the proceeding is usually held to be judicial and subject to be reviewed on *certiorari.*' "

In referring to the trial of the charges against Nider it was further said in the same case:

"Under the decisions already cited it would seem clear that the City Commission will act in a judicial capacity in conducting the hearing, in making its findings on the evidence produced and in pronouncing its judgment."

As the proceeding before us was judicial in its nature and as the commissioners acted in a judicial capacity in making the challenged order, it follows that the writ of review and not the writ of mandate is the proper remedy afforded to petitioner.

This conclusion does not conflict with the holding in the case of *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal. (2d) 557 [59 Pac. (2d) 119], and the numerous cases following that decision. Those cases involved actions by state boards exercising statewide jurisdiction. They are grounded on the provisions of section 1 of article VI of the Constitution which vests in the state senate and named courts general statewide judicial powers. From those provisions it follows that the legislature has no power to vest in other bodies general statewide judicial powers.

We have no such situation here. The same section of the Constitution gives to the legislature the power to establish inferior courts "in any incorporated city or town, township, county or city and county". Under this provision we have no difficulty in concluding that the legislature may, either by general law or through the provisions of a charter, vest judicial powers in boards or commissions having the limited territorial jurisdiction named in the Constitution. This makes it unnecessary for us to conclude that *Standard Oil Co.* v. *State Board of Equalization, supra,* and the other cases following it, overrule by implication the long line of cases, a few of which have been cited, which hold that boards of supervisors, city commissions, city councils and other such bodies may exercise judicial functions and that their orders may be reviewed in *certiorari* proceedings.

Nor do these conclusions conflict with those arrived at in *Drummey* v. *State Board,* 13 Cal. (2d) 75 [87 Pac. (2d) 848], and *Davis* v. *State Board,* 35 Cal. App. (2d) 428 [95 Pac. (2d) 959], where it was held that it was

necessary for the courts to pass on the weight and sufficiency of the evidence introduced in support of orders of administrative boards having no judicial powers, which orders deprived persons of the right in the one case of engaging in the business of undertaking and embalming and in the other of the right to engage in the practice of optometry.

These decisions are based on the due process clauses of the federal and state Constitutions. (14th Amend. U. S. Const.; sec. 13, art. I, Const. of Cal.) The holdings were made necessary by the conclusion that as licenses to engage in those occupations were property rights they could only be taken away after notice to the licensees and proper hearings; that as the state boards possessed no judicial powers the courts must provide for the notices and places of hearings and must pass on the weight and sufficiency of the evidence before the licenses could be revoked. Thus, as no other forum was available and as no other remedy was provided by law it was necessary to employ the writ of mandate to satisfy the due process clauses of the Constitutions.

The situation here is far different from those confronting the courts in the last-cited cases because here a forum was provided by law to try the charges against petitioner. Written charges had to be filed and notice given petitioner. On his request a hearing was required before a body possessing judicial powers. Evidence was taken and a decision rendered on that evidence. This satisfied the requirements of due process. In *Estate of Stobie*, 30 Cal. App. (2d) 525 [86 Pac. (2d) 883], it was said:

"In considering this question in *Sherer* v. *City of Laguna Beach*, 13 Cal. App. (2d) 396 [57 Pac. (2d) 157], it was said:

" 'Due process of law does not entitle a person to have a hearing before any particular board, tribunal or court. It is satisfied if he be given a fair hearing upon reasonable notice before a board, tribunal or court having jurisdiction of the proceedings and the parties. As was said in *Ex parte Wall*, 107 U. S. 265 [2 Sup. Ct. 569, 27 L. Ed. 552]: " . . . 'Perhaps no definition,' says Judge Cooley, 'is more often quoted than that given by Mr. Webster in the Dartmouth College case: "By the law of the land is most clearly intended the general law—a law which hears before it condemns; which proceeds upon inquiry, and renders judgment

only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society.'' ' (Cooley, Const., Lim. 353.) The question, what constitutes due process of law within the meaning of the Constitution, was much considered in this court in the case of *Davidson* v. *New Orleans,* 96 U. S. 97 [24 L. Ed. 616]; and Mr. Justice Miller, speaking for the court, said: 'It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has by the laws of the state a fair trial in a court of justice, according to the modes of proceeding applicable to such a case.' '' (See, also, *City of Seattle* v. *Kelleher,* 195 U. S. 351 [25 Sup. Ct. 44, 49 L. Ed. 232].) ' ''

Further, as was said in *Ludolph* v. *Board of Police Commrs.,* 30 Cal. App. (2d) 211 [86 Pac. (2d) 118]:

"The right to an office or of employment with the government or any of its agencies is not a vested property right, and removal therefrom will not support the question of due process. (*Matter of Carter,* 141 Cal. 316, 319 [74 Pac. 997]; *Boyd* v. *Pendegast,* 57 Cal. App. 504, 506, 507 [207 Pac. 713]; *Garvin* v. *Chambers,* 195 Cal. 212, 225 [232 Pac. 696].) "

As we have already seen, an action involving discretion on the part of an officer, board or commission cannot be controlled by a writ of mandate. Such writ can only require the performance of a duty required by law. The duty owed petitioner was a hearing held in accordance with the requirements of law. A hearing was had in obedience to the order of this court. At the conclusion of that hearing the commissioners weighed the evidence and rendered judgment. Those functions involved the exercise of a discretion on the part of the commissioners that cannot be controlled by a writ of mandate. As there was evidence before the commission which supported its order, and as it had jurisdiction to make that order, we cannot, by writ of mandate, compel it to vacate that order.

The peremptory writ is denied and the alternative writ of mandate is discharged. The order of the commission is affirmed.

Barnard, P. J., and Griffin, J., concurred.