Souder *v.* Philadelphia et al., Appellants.

2

Argued April 20, 1931.   Before Frazer, C. J., Walling, Simpson, Kephart, Schaffer and Maxey, JJ.

*H. Eugene Heine,* Assistant City Solicitor, with him *T. B. K. Ringe,* and *August Trask Ashton,* City Solicitor, for appellant.—The lower court had no power to

substitute its own findings for those of the civil service commission: McCoach v. Phila., 273 Pa. 317; Com. v. Phila., 273 Pa. 332.

The charge, and specifications in explanation thereof, were in proper form and legally sufficient: Truitt v. Phila., 221 Pa. 331.

The court had no jurisdiction to review the decision of the civil service commission on a writ of alternative mandamus: Crofut v. Phila., 276 Pa. 366, and 2 D. & C. 459; Boggs v. Monongahela City, 47 Pitts. L. J. 154; Thomas v. Connell, 264 Pa. 242.

*Stuart L. Kirk* and *George S. Russell,* for appellee.— Charges must be clear and definite, and so understandable that the accused can intelligently be informed of the offense which he has to answer: Owen v. Porter, 22 Pa. Dist. R. 707; Sailer v. City, 30 Pa. Dist. R. 565; McCoach v. City, 30 Pa. Dist. R. 597.

Mandamus is the proper procedure: McCoach v. Phila., 273 Pa. 317; Goldberg v. Phila., 279 Pa. 356.

OPINION BY MR. JUSTICE SCHAFFER, June 27, 1931:

The grand jury of the County of Philadelphia made a presentment in which they set forth that certain police officials of the City of Philadelphia (among them, the plaintiff Frank Souder, a captain of police), in an investigation being conducted by that body, had been unable to explain satisfactorily the source of their large personal estates, that the persons they named "have or have had during the past few years vast amounts of money," that their estates as reflected by their bank accounts had increased in size with amazing rapidity by the repeated accumulation at frequent intervals of large sums; that in many instances the amounts of money received and handled amounted to several times the yearly salary of the individual concerned; that most of the amounts handled had been in currency; that the money received by the persons named had been all or

4

substantially all dishonestly acquired and that none of them was fit to hold any position in the municipal government. Specifically as to Souder they reported that he had two bank accounts and in the years 1924, 1925, 1926 and 1927 and up to October 3, 1928, there was deposited therein $68,905.89, of this amount all but $2,360 was deposited after January 1, 1925, on which date he became a lieutenant of police, and that, in the year 1928 alone, up to October 3d, he deposited $16,582.67; that in paying for his house, which cost $9,000, $4,500 was paid in cash; that he purchased certain securities in the year 1928 amounting to $1,011; and that from time to time he purchased various automobiles requiring cash payments of about $700 each, none of which payments came from any of his accounts.

As the result of this presentment of the grand inquest, the director of public safety of the city, head of its police department, charged Souder, before the civil service commission, the body designated by the Act of June 25, 1919, P. L. 581, article XIX, section 18, to hear and determine charges against police, with "conduct unbecoming an officer." Such charges, emanating from a grand jury, would require a police official to be brought to trial in order that the discipline and morale of the police department of the city might be properly maintained. The charges were those above outlined, embodied in the grand jury's report, and in them it was set forth that he had been unable to offer, and did not offer, to that body any reasonable explanation as to how he could have come into the possession of such monies and properties honestly. It was further detailed in the charges that the grand jury stated that they believed the money received by the accused was either all or substantially all dishonestly acquired and that they had found that he was not fit to hold any position in the municipal government. To these charges Souder pleaded not guilty. At his trial before the civil service commission the presentment of the grand jury was offered in evidence and

a transcript of his testimony before that body together with a summary of his bank deposits and a list showing his yearly salary and allowances from the time of his appointment to the police force in 1911, amounting to $29,713.68. His yearly salary as captain was $2,550. The accused officer did not offer himself as a witness or present any explanation of the charges made against him and no testimony was produced on his behalf. He contented himself apparently with the statement which he had made to the grand jury that he received and deposited an average of $2,000 yearly on account of dog licenses and $1,000 to $1,500 on account of the welfare fund. In its findings a majority of the civil service commission set forth that Souder had made no defense to the charges and that in their opinion it was his duty to answer them and they therefore found him guilty of conduct unbecoming an officer and dismissed him from the service.

On July 2, 1929, Souder petitioned for a writ of alternative mandamus, which was allowed, and, after answer filed and issue joined, the court below, trying the case by agreement without a jury, entered judgment that his discharge was illegal and of no force, that the director of public safety restore him to his position as captain of police and that judgment be entered against the city for the full amount of his salary from October 30, 1928, to the date of the judgment with interest. Judgment was accordingly entered for $6,356.92, from which the city brings this appeal.

The court below arrived at its judgment from a mistaken point of view. Souder was a captain of police, whose duty it was not only to guard and protect the citizens of the municipality who had honored him with its confidence by appointing him to the high position of trust and civic responsibility which he filled and to run down and bring to justice malefactors within its limits, but also, as officer in high command of its police, to preserve and enforce discipline among those over

whom he had been placed in a position of authority. It was essential in the proper discharge of his duties that he should comport himself as an officer in such manner that no act of wrongdoing should attach itself to him, to the end that those who served under him should feel for him that respect which insures confidence and obedience. As such an officer in such a station he should have been keen to see that no taint of evil doing attached itself to him and when charges were made, reflecting upon his honesty and integrity, that they were met with denial and answering proofs of no delinquencies. He should have held himself above suspicion. Instead of so doing, when charges of the gravest nature were brought against him by the grand inquest of the county, he answered before them in a way not to establish his freedom from wrong by full explanation, but in a manner calculated to confirm his complicity in crime, and, when summoned by his superior on specific charges before the tribunal charged by the law with the duty of inquiring into them, he answered not at all. This in itself was conduct unbecoming an officer.

The court below treated the matter as though he were charged with crime; not so. He was charged with conduct unbecoming an officer, in that when charged with acts, which, if committed, amounted to crimes, he had not freely and satisfactorily answered the allegations brought against him, thus demeaning himself as no officer should. The civil service commission properly considered this as conduct unbecoming an officer. With its finding under the circumstances the court had nothing to do and could not substitute its judgment for that of the tribunal fixed by law to determine the question. If the courts may proceed by mandamus in certain cases to reinstate police officers, this surely is not one of them. Here the situation is that, under the evidence produced, the civil service commission might with entire propriety find, and we think it properly did find, that Souder's conduct was not such as an officer should ex-

hibit. The court could not upon this question set its judgment up against that of the commission. There is no question but that he received the large sums of money. He did not deny doing so. He could not escape the implications of wrongdoing simply by stating that he had received dog tax money and welfare funds. In order to absolve himself, he was bound to show the details of his receipts and, not only this, but also how he disbursed the money, if indeed he did disburse it. To allege that he received these funds, and not to show how he disbursed them from his bank accounts amounted to nothing. Unless he showed that out of his bank accounts he paid the proper authorities the dog tax money, and, to those entitled to receive it, the welfare funds, he did not answer the charge at all. He could only clear his uniform by an account showing charge and discharge of these sums. Unless he paid them out of his bank accounts, not they, but other money had gone into it. When he stopped short of thus clearing himself from the accusations against him, his conduct was unbecoming an officer of police.

In cases such as this the powers of the courts may be exercised by mandamus in but a very limited class: Crofut v. Phila., 276 Pa. 366. The very terms of the act deny the right to proceed by mandamus under circumstances such as confront us in the pending proceeding. It provides, section 18, page 620; "No police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges may be filed by any superior officer or by any citizen or taxpayer, and shall, within thirty days after filing, be heard, investigated, and determined by the commission.......The hearing shall be public, and the accused and his counsel shall have the right to be heard. The finding and decision of the commission or commissioner or of such person or board, when approved by the commission, shall

be certified to the appointing authority, and shall be forthwith enforced by such authority." "Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, mandamus will not lie to compel a revision or modification of the decision resulting from the exercise of such discretion, though, in fact, the decision may have been wrong": Runkle v. Com. ex. rel. Keppelman, 97 Pa. 328, 332, citing Griffith v. Cochran, 5 Binn. 87; Com. v. Perkins, 7 Pa. 42; Com. v. Mitchell, 82 Pa. 343. See also Dechert v. Com. ex rel. Smart, 113 Pa. 229; Felts v. Delaware, Lackawanna & Western R. R. Co., 160 Pa. 503. The commission does not alone consider and pass upon the question of wrongdoing alleged against an officer of the police, but also upon his conduct in its bearing on the discipline of his subordinates and upon the discipline and morale of the entire force. What constitutes cause for removal must necessarily be a matter of discretion in the commission: Com. v. Phila., 273 Pa. 332; McCoach v. Phila., 273 Pa. '317.

When we examine the opinion of the court below, its error becomes clear. It treats as evidence in the case, a paper entitled "Summary of Testimony" which in some way had become attached to another paper which was in evidence before the commission entitled "Summary of Bank Account." The first named paper was a mere memorandum compiled by counsel for the city as an aid to him in the trial of the case and was not offered in evidence. On this paper appeared these notations following references to pages of the stenographer's transcript of the testimony taken before the grand jury: "Testified he received and deposited an average of $2,000 yearly account dog license. (?) Get records of payments by him to the city. Testified he deposited on an average of $1,000 to $1,500 account welfare fund. Obtain record of his payment of this fund." The court comments upon this supposed piece of evi-

dence, first, that the amounts collected for the welfare fund were "presumably monthly." Just why this presumption is entertained we are unable to see. Secondly, the court says that these collections were legitimate. Of course, they were, if made, but their legitimacy was not established by an averment of their receipt, without showing their proper disbursement. Money might have been collected from these two proper sources and at the same time large sums have been unlawfully received. If the disbursement of all the money received was not shown it could not be said that any adequate explanation had been made. The court in the course of its opinion says there was no occasion for the accused officer to take the witness stand before the commission. We cannot lend our assent to this view of his duty. He had been charged by the grand jury with acts that were criminal, involving moral turpitude and by the head of the police department with the improper receipt of large sums. He did not deny that the money came to his hands. It exceeds in amount his salary more than twice over. This being so, it was his duty to explain fully, and in order to show his fitness to continue as an officer in the police department he was bound to exculpate himself from any wrongdoing. This he did not do but remained silent before the commission. In itself this was conduct unbecoming an officer. We cannot agree with the court's finding that there was an abuse of discretion by the commission. We are of opinion that none was shown. The court was without authority to set aside the commission's finding and to make the order that it did.

The order and judgment of the court below are reversed and set aside and the writ of mandamus is quashed at the cost of appellee.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

The civil service commission in making its finding noted the following: "The record of Captain Souder in the police department was excellent." Police officers

devote their services to the government, they have a distinct valuable property in their employment. It should be protected and preserved against an unfounded attack. The city charter of Philadelphia recognizes this obligation to these officers and this court has recognized it by protecting them from unwarranted attack. The principle was asserted that no officer should be dismissed from service unless it was for a cause not only charged *but proved.* There is no reason why the rule of conduct so well expressed by the majority opinion should not apply to every public officeholder. It would be novel indeed for a public officer to be removed for unworthy conduct on a record such as here presented. It is on this phase of the case that I dissent from the majority opinion.

I am aware that the grand jury presented or preferred charges as outlined in the majority opinion, but this presentment had no more force or effect in trial than a bill of indictment, and in any subsequent proceeding it carried no greater weight, even before the civil service commission. There should have been some proof of the substantive facts necessary to sustain the charge before the commission. It may be that these men should explain the large sums of money in their bank account, because of their small salaries, but when they do explain, they should not be dismissed arbitrarily or maliciously.

I do not know whether this officer was so dismissed or not, as the record in the case is absolutely barren of any legitimate or other evidence on which to find a conviction for anything, much less that of an officer charged with conduct unbecoming his obligation to the city government and the public.

Judge FINLETTER accurately states the case in the following language: "The petitioner did appear before the grand jury and offered an explanation of his wealth. The explanation was contained in his testimony before the grand jury. This was offered in evidence before the

commission. They ruled that it be received. It was not in fact produced to the commission. A paper was received in evidence by the commission, and appears in the report of their proceedings, labeled 'Summary of Testimony,' as stated in the preceding paragraph. Except in this fragmentary way the explanation offered by the petitioner to the grand jury does not appear in the report of the proceedings before the commission, although it was offered and received by them in evidence." My examination of the record shows this to be correct. It further shows that an explanation was submitted by Captain Souder to the superintendent of police, and from him transmitted to counsel who represented the director of public safety at the hearing. That important paper has been lost by counsel. The omission of the captain's statement, vitally important to him, was very material. The evidence supposed to have been submitted to the grand jury, even if it had been properly receivable by the commission, was not submitted to it. There was a charge but no evidence to sustain it. Unless the commission is endowed with power to convict on reports without substantive evidence to reinforce them, then the finding of the court below was the proper one. The absence of the evidence taken by the grand jury leaves the case barren of any evidence to sustain the finding of the commission.

No question was raised as to the propriety of the mandamus in the answer filed in this case. The question as to whether or not the mandamus should have issued is entirely out of the case. If there was any question, it should have been determined primarily, but, on a review of our authorities, the hearing judge was absolutely right in holding that mandamus would lie. It has been so decided in many cases, and the cases referred to in the majority opinion are not in point.

I would sustain the judgment of the court below.