## George v. Dickel, County Treasurer

*Hiram Hathaway, Jr.*, for plaintiff; *C. William Kraft*, for defendant.

FRONEFIELD, P. J., October 18, 1934.—On April 24, 1934, the plaintiff, Peter George, stating that he was the chief òf a band of gypsies known as the "George Tribe", applied to the defendant, William L. Dickel, as county treasurer of this county, for a license, under the Act of May 6, 1909, P. L. 445, 16 PS §3741, to pitch its camp and to carry on its business in this county. He tendered to the defendant the proper fees required by the act, but the defendant refused to issue a license. The plaintiff was subsequently arrested for maintaining a camp without a license. Thereupon, the plaintiff filed a petition for a writ of peremptory mandamus to compel the defendant to issue a license to him. The court allowed an alternative writ, to which the defendant filed an answer alleging that the act did not require him to issue a license if, in his judgment, it was improper to do so, and further alleging that he was informed and believed that the same band had previously encamped in the county to the disturbance of the peace of the neighborhood and that members of the band had frequently violated the criminal laws of the Commonwealth. To this answer the plaintiff demurred.

It is well established that mandamus lies to compel the performance of ministerial acts, but it is equally well established that the writ will not issue, where a body clothed with deliberative and descretionary powers has acted, to compel a revision or modification of its decision: Reese v. Board of Mine Examiners, 248 Pa. 617, 622; Souder v. Philadelphia et al., 305 Pa. 1, 8. As was said in Davis v. Patterson, Treasurer, et al., 12 Pa. Superior Ct. 479, 488: "The courts have no jurisdiction to compel, by mandamus, a public officer to do any act which the law does not impose upon that officer a duty to perform, or to discharge the functions of his office in a manner not authorized by law; or to do anything which the law does not expressly or by necessary implication require him, as an officer, to do. The courts cannot impose duties upon public officers; the function of the writ of mandamus is to enforce duties imposed by law."

Therefore, unless the act in question, expressly or by necessary implication, imposes an unqualified duty on the part of the defendant to issue such license, the writ must be discharged.

Section 1 of the act provides that it shall be unlawful for a band of gypsies to pitch its camp or transact its business within any county until it has obtained a license from the county treasurer thereof, for which there shall be paid the sum of $50 for the use of the county and a fee of 50 cents to the treasurer as his

fee for issuing the license. There is no express language requiring the treasurer to issue such license upon receipt of the said fees.

Section 2 provides the penalties for violating the provisions of the act. Section 3 provides that, where a person shall be arrested, the constable shall, on demand, take him before the county treasurer and, if he takes out a license, he shall be discharged. Here again, there is no express language requiring the treasurer to issue such a license.

We have been unable to find any decision interpreting the provisions of this statute. Therefore, it has been necessary to examine similar statutes governing the issuing of licenses and to draw an analogy therefrom.

This study reveals that there are three types of statutes. The first class covers statutes which provide that, where the applicant has paid a prescribed fee or has fulfilled certain named prerequisites, the licensing officer or board "shall grant" the license. Examples of this class are the Act of March 30, 1864, P. L. 141, covering amusement houses, the Act of April 9, 1859, P. L. 435, covering auctioneers, the Act of May 27, 1841, P. L. 396, covering brokers, and the Act of May 29, 1901, P. L. 327, covering the right to sell oleomargarine. Under such acts, it has been held that the licensing officer or board has no discretion and that mandamus will lie to enforce the duty so imposed. See Dotson v. Foust, 233 Pa. 88; Commonwealth ex rel. v. Stokley, Mayor, 12 Phila. 316.

The second class covers statutes where the language clearly indicates that the licensing officer or board shall have some discretion. Examples are the Act of April 11, 1868, P. L. 83, relating to foreign insurance companies, which provides that the Auditor General, shall, "if he is satisfied", etc., grant a license; the Act of April 15, 1903, P. L. 201, as to pilots; and the Act of March 22, 1867, P. L. 40, relating to taverns, eating houses, etc., which provided that the court of quarter sessions might refuse a license where, "in the opinion of said court", such license is not necessary.

The third class of statutes, under which the instant statute falls, is where there is no expression in the statute itself indicating whether or not the licensing officer or board has discretion. An example of this type is the Act of April 10, 1849, P. L. 570, sec. 19, which provides that "no person shall keep any billiard room, bowling saloon or, ten pin alley, in this Commonwealth, without first taking from the treasurer of the proper county a license, for which he . . . shall pay", etc. Unfortunately, we are unable to find any reported case construing this section.

The question remains, therefore, whether discretion is implied in the absence of mandatory language in the statute, or whether there is no discretion unless there be an express grant thereof in the statute.

This question is discussed in 37 C. J. 240, where it is said: "The power vested in the board or officer to grant licenses upon the applicant complying with the prescribed conditions, unless mandatory in terms, carries with it, either expressly or impliedly, the power of exercising, within the limits prescribed by the act or ordinance, a reasonable discretion in granting or refusing licenses. . . . In exercising this discretion, the board or officer should consider all the circumstances against, as well as in favor of, granting the license, and act in accordance with what they believe to be in the interest of the public safety or public welfare, and if for good reasons they are satisfied that the license ought not to be granted, they are justified in refusing it."

We feel that this is a sound statement of the law. Where the public welfare is concerned, the licensing officer certainly should be permitted to take that fact into consideration and should not be required to issue a license to anyone willing to pay the license fee. It would be different if the act were passed

merely for the purpose of raising revenue. We are of the opinion, however, that the statute in question was not passed solely for the purpose of raising revenue. The roving nature of gypsies is well known. Many conduct themselves properly, but it has frequently happened, where some offense has been committed by one or more of a band, that by the time sufficient evidence is obtained against them they have moved on to some other locality. It was probably with this in mind that the legislature passed this act, intending thereby to enable the county authorities to have an opportunity to inquire into the character of the particular band applying before granting permission for it to settle within its borders. It would be a mockery to say that a band which had conducted itself so as to disturb the peace of the neighborhood should be permitted to return the following year merely by paying a nominal license fee.

We are of opinion that the act was passed for the benefit of the public welfare, and therefore there was an implied discretion in the licensing officer to grant or refuse a license depending upon the circumstances, to be considered in connection with each individual application. Feeling as we do that the defendant had discretionary power, the reason which he alleges in support of his refusal are clearly satisfactory ones, and we can find no abuse of his discretion. Therefore, the plaintiff's demurrer cannot be sustained.

*Order*

And now, to wit, September 21, 1934, after due consideration, it is ordered and decreed that the question of law raised by the plaintiff's demurrer be and it is hereby decided against the plaintiff, and the writ of peremptory mandamus is hereby refused.

Plaintiff to pay the costs.                    From William R. Toal, Media, Pa.