[Civ. No. 13008. Second Dist., Div. One. Apr. 27, 1942.]

MOSIER M. MEYER, Appellant, v. BOARD OF PUBLIC WORKS OF THE CITY OF LOS ANGELES et al., Respondents.

Loren A. Butts for Appellant.

Earl G. Read, as Amicus Curiae, on behalf of Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney and George William Adams, Deputy City Attorney, for Respondents.

DESMOND, J. pro tem.—Appellant filed a petition for a peremptory writ of mandate to be directed to respondents, "ordering and commanding the respondent Board of Public

Works of the City of Los Angeles to reinstate the petitioner to the position of Superintendent of Street Maintenance, Bureau of Engineering, Department of Public Works of the City of Los Angeles, and to permit him to perform the duties of said position and to restore to him all the rights incident to said position and to cause demands and pay checks to be issued to said petitioner for the amount of salary or wages due the petitioner from the 1st day of August, 1940, until restored to duty, at the rate of Four Hundred Seventy-five Dollars ($475.00) per month, and

"Ordering and commanding the respondent Board of Civil Service Commissioners to certify that petitioner has been duly and regularly appointed to the position of Superintendent of Street Maintenance, Bureau of Engineering, Department of Public Works of the City of Los Angeles, and approve the salary or compensation due him from December 31, 1939, and

"Ordering and commanding the respondent Dan O. Hoye, Controller of the City of Los Angeles, to approve the demand in the sum of Three Thousand Three Hundred Twenty-five Dollars ($3,325.00), drawn in favor of petitioner and delivered to the said Dan O. Hoye, all in accordance with the order and instructions of the Council of the City of Los Angeles, as hereinabove set forth, and to approve all other demands or pay checks when presented to him for approval, and

"Ordering and commanding the respondent Leon V. McCardle, Treasurer of the City of Los Angeles, to pay said demands or pay checks when presented to him for payment . . ."

A demurrer was filed to said petition, alleging that it did not "state facts sufficient to constitute a cause of action or to support the issuance of a Writ of Mandate against the respondents or any of them or to entitle petitioner to any relief at all." The trial court sustained this demurrer, and petitioner having declined to amend his petition, the court then entered judgment decreeing that the petitioner take nothing by reason of his action against the respondents or either or any of them. The appeal is from this judgment.

In December of 1939 the appellant, then holding the position of superintendent of street maintenance, received the following communication:

"Los Angeles, Calif., December 22, 1939.

"To the Honorable

The Board of Civil Service Commissioners,

1100 City Hall, Los Angeles, Cal.

"Gentlemen:

"You are hereby notified that we have this day discharged effective December 31, 1939, Mosier M. Meyer from his position as Superintendent of Street Maintenance, Code #8293 (p) in the Bureau of Engineering of the Dept. of Public Works of the City for the following cause (state fully), to-wit:

"As set out in the attached copy of the resolution adopted by the Board of Public Works at its regular meeting on December 22, 1939, which resolution is hereby made a part hereof with the same force and effect as if set out in detail herein.

"(APPROVED Dec. 22, 1939
BOARD OF PUBLIC WORKS
By Milton Offner, Secretary)

"(If above space is insufficient to state the cause, same may be stated or continued on separate pages and attached hereto. Please sign or initial any attached pages.)

"Respectfully yours,

(Signature) BOARD OF PUBLIC WORKS
OF THE CITY OF LOS ANGELES,
CALIFORNIA

(Title) By C. B. WORSNOP, President

## "RESOLUTION

"WHEREAS, the Board of Public Works for the past approximately two months, conducted an investigation concerning the conduct of Mosier M. Meyer, in relation to his duties for the City of Los Angeles and the Department of Public Works, and has interrogated witnesses and received evidence, both oral and documentary, and the said Mosier M. Meyer has appeared before this Board and testified under oath; and

"WHEREAS, this Board is now of the opinion that the said Mosier M. Meyer should, because of his conduct, be discharged from his official duties;

"NOW, THEREFORE, Be it Resolved:

"That it is the sense of this Board, gained from an examina-

tion of witnesses and documents, that the said Mosier M. Meyer has been interested, financially beneficial to himself, in one or more public contracts made by private contractors with the City of Los Angeles, and this Department, and that his explanations relative to his part in relation thereto are unsatisfactory and do not convince this Board that he was not implicated therein, and this Board further states and finds that the said Mosier M. Meyer was directly financially and beneficially interested in said public contracts, contrary to the best interests of the City of Los Angeles, and also contrary to Section 28 of the Los Angeles City Charter; and

"That although it is the finding of the Board that the said Mosier M. Meyer was implicated, as above stated, it is the further finding of the Board that irrespective of the presence or absence of guilt of said Mosier M. Meyer in reference to the Grand Jury charges, the manner of their dismissal, and the unsatisfactory explanations to this Board of said Mosier M. Meyer in relation thereto, have resulted in public scandal; and remaining unsatisfactorily explained the further retention of said Mosier M. Meyer as an employee of the Department will result in prejudice to the good order of the Department and loss of public confidence therein; and

"This Board further finds that he has otherwise shown himself unsatisfactory and untrustworthy as a public employee, as more specifically shown by the said evidence and records in said investigation;

"BE IT FURTHER RESOLVED that all evidence, both oral and documentary, and transcripts, be and the same are hereby ordered filed as part of the records of this Department, and reference is now made to the same and the same are hereby made a part of this Resolution;

"BE IT FURTHER RESOLVED that the said Mosier M. Meyer be and he is hereby removed and discharged from his said position as Superintendent of Street Maintenance (Code #8293 (p)) effective December 31, 1939;

"BE IT FURTHER RESOLVED, that the Secretary of this Board be, and he is hereby directed to prepare the notice of removal and discharge in accordance with the provisions of the Charter setting forth the substance of this Resolution therein and serve the same forthwith upon the said Mosier M. Meyer and certify the same to the Civil Service Commission."

Appellant had first entered the employ of the city of Los

Angeles in the year 1914, working as a chainman on the engineering force, and gradually rose from the ranks until January of 1924, when he was promoted to the position of superintendent of street maintenance, which office he continued to hold until he was removed.

Within five days after the receipt of the notice of his removal effective December 31, 1939, appellant filed with the board of civil service commissioners an answer denying generally and specifically each and every allegation contained in the charges made by the board of public works and asked that the "purported charges be investigated and that this honorable board also investigate the alleged grounds for his attempted removal." Thereafter, following a hearing, the board of civil service commissioners adopted a resolution reading as follows:

"WHEREAS, the Board of Public Works discharged Mosier M. Meyer as of December 31, 1939, for cause, following which under Charter section 112, he requested investigation of the discharge by the Board of Civil Service Commissioners, which now has completed its investigation.

"BE IT HEREBY RESOLVED, by the Board of Civil Service Commissioners:

"1. That the grounds stated for the discharge are not proven to the satisfaction of this Board by the evidence submitted or obtained; and likewise are not satisfactorily disproven by the testimony of Mosier M. Meyer or by the other testimony and documents relied on by him;

"2. That inasmuch as Mosier M. Meyer in his own behalf presented testimony from which this Board concludes he habitually engaged in gambling for high stakes, over a period of years, under circumstances which tended and may yet tend to impair public confidence in him and his department, this Board does not find him a fit and suitable person for reinstatement;

"3. That these findings be placed in full upon the minutes of the Board, together with the following statement;

"This Board recognizes a duty to determine whether cause exists for discharge, independently of the discharging authority. Because of lapse of time the truth or falsity of the charges here perhaps never will be adjudicated by any law court. In justice to the public and to Mosier M. Meyer, we therefore have taken a long time to investigate and consider.

"The inquiry before the Board of Public Works is indi-

cated by the record to have been far from calm and dispassionate. Mosier M. Meyer objected to the fairness of that inquiry; and therefore this Board extended every opportunity for him and his counsel to appear before this Board, to present evidence, and to call witnesses, in his own behalf.

"The action of the Board of Public Works rests in part on written assertions of Clarence L. Holt. Much delay resulted from an attempt to bring Clarence L. Holt before this Board for questioning by this Board and Mosier M. Meyer. When subpoenaed Clarence L. Holt disappeared, and has not yet been found in the State.

"Mosier M. Meyer has not satisfactorily accounted for his unexplained sources of income, which gave rise to the charge that he had been unlawfully interested in public contracts. He has not cooperated in presenting the related accounts of his wife. His only explanation of the large increments in his own account were that presumably they resulted from his gambling. The checks he exhibited to fortify this explanation were not helpful and did no more than establish other sufficient grounds for discharge, based upon his gaming habits.

"In his former position we are satisfied Mosier M. Meyer was not incompetent, and some testimony indicated extraordinary capacity and workmanship.

"So long as the principal charge remains neither completely proved, nor yet disproved, unfortunately a lack of public confidence in him can reasonably have been thought to exist by his superiors. They, and not this Board, have the duty to determine whether this is to the ultimate detriment of the city and whether disciplinary action should accordingly be taken. Since passage of money through gaming is a traditional method of bribery, extensive gaming by one in a responsible position connected with public works may lead to further public distrust and suspicion, though he may not in fact be corrupt or corrupted.

"Under such circumstances, this Board performing its duty under section 112 of the Charter cannot and does not find Mosier M. Meyer to be a fit and suitable person, so as to set aside the discharge made by the Board of Public Works, effective December 31, 1939."

Following this action by the board of civil service commissioners, the City Council of Los Angeles considered the matter, as will appear from the following record attached as an exhibit to appellant's petition:

"Mr. Thrasher: I move, as a substitute motion that the claim of Mosier M. Meyer, for salary due him at the rate of $475.00 per month from January 1, 1940 to July 31, 1940, in the amount of $3,325.00 be allowed; that the money be allocated from the Reserve Fund to the Unappropriated Balance, and the demands be drawn from same for the following reasons:

"1. That the Board of Public Works discharged Mr. Meyer December 31, 1939, on certain charges that were preferred by them, but were never proven by said Board of Public Works, and which were later referred to the Board of Civil Service Commissioners for review, as provided by the City Charter.

"2. That the Board of Civil Service Commissioners, after investigation, were not satisfied with the evidence submitted and did not sustain the findings of the Board of Public Works.

"3. That the grounds upon which the Board of Civil Service Commissioners did discharge Mr. Meyer, were allegedly, frequently indulging in gambling in private life six and one-half years ago.

"4. That the testimony given proved that the gambling referred to was conducted on Mr. Meyer's own time, and not when he was on duty and paid by the City.

"5. The Board of Civil Service Commissioners stated 'in his former position, we are satisfied Mr. Mosier Meyer was not incompetent, and some testimony indicated extraordinary capacity in workmanship'.

"No evidence was presented at any time that indicated that the activities referred to interfered in any shape or manner with the performance of his duties as a City Employee.

"Under these circumstances I believe this unjust discrimination against Mr. Meyer should be rectified by the payment of his salary claim.

"WHICH SUBSTITUTE MOTION, BEING DULY SEC. BY MR. GAY, WAS ADOPTED."

On September 5, 1940, the acting mayor of Los Angeles addressed the following communication to the members of the council:

". . . With reference to File No. 1039 (1940) returned herewith concerning your action of August 29, 1940, in approving of the transfer of $3,325.00 from the Reserve Fund to the Unappropriated Balance for the payment of the claim of

Mosier M. Meyer for salary allegedly due him as Superintendent of Street Maintenance at the rate of $475.00 per month from January 1, 1940 to July 31, 1940, you are advised as follows:

"In view of the attached statements of the City Attorney, Controller and the Bureau of Budget and Efficiency I feel compelled to disapprove of the appropriation. This disapproval is based entirely upon my understanding that such a payment would be contrary to the provisions of the City Charter and does not indicate a concurrence in, or approval of the action of the Board of Public Works or Civil Service Commission.

"Yours truly

(Signed) R. L. Burns.

Acting Mayor."

On September 24, 1940, the appropriation was passed over the veto of the acting mayor and a demand for payment of the salary claim to July 31, 1940, was delivered to respondent Hoye, controller of the city of Los Angeles. He refused to allow or approve the claim, and shortly thereafter, on October 1, 1940, the petition for a writ of mandate was filed.

For convenience in discussing the matters presented by this appeal, the board of public works will hereafter be called the board, and the board of civil service commissioners the commission.

Section 112 of the charter of the city of Los Angeles provides ". . . but no person in the classified civil service of the city, other than an unskilled laborer employed by the day, shall be removed, discharged or suspended except for cause, which shall be stated in writing by the board or officer having the power to make such removal, discharge or suspension, and filed with the board of civil service commissioners, with certification that a copy of such statement has been served upon the person so removed, discharged or suspended, personally, or by leaving a copy thereof at his last known place of residence if he cannot be found. Upon such filing such removal, discharge or suspension shall take effect. Within fifteen days after such statement shall have been filed, the said board, upon its own motion, may, or upon written application of the person so removed, discharged or suspended, filed with said board within five days after service upon him of such statement, shall proceed to investigate the grounds for such re-

moval, discharge or suspension. If after such investigation said board finds, in writing, that the grounds stated for such removal, discharge or suspension were insufficient or were not sustained, and also finds in writing that the person removed, discharged or suspended is a fit and suitable person to fill the position from which he was removed, discharged or suspended, said board shall order said person so removed, discharged or suspended, to be reinstated or restored to duty. The order of said board with respect to such removal, discharge or suspension, shall be forthwith certified to the appointing board or officer, and shall be final and conclusive. ... If the board of civil service commissioners shall order that any person removed, discharged or suspended under the provisions of this section be reinstated or restored as above provided, the person so removed, discharged or suspended shall be entitled to receive compensation from the city the same as if he had not been removed, discharged or suspended by the appointing board or officer.''

■ As his first ground of reversal, appellant claims that the cause referred to in the resolution which was adopted by the board is only partially stated in that resolution, in that ''the evidence, both oral and documentary, and the reporter's transcript referred to in said resolution and made a part of the cause for his removal, were not served upon him or filed with the commission as required by section 112 of the charter of said city.'' He cites the case of *Shannon* v. *City of Los Angeles*, 205 Cal. 366 [270 Pac. 682], as authority for the rule requiring ''strict compliance with the requirements of section 112 of the charter of the city of Los Angeles by the discharging authority in order to lawfully or effectively remove an employee in the classified civil service of said city.'' In that case the petitioner had not received the written notice of the charge made against him as required by the charter, and relied successfully upon that deficiency to secure reinstatement.

We are unable to apply the reasoning of the Shannon case to the facts of the instant case. There is no requirement that all causes that might be suggested for removal of an employee be stated in the written notice served upon him; the statement of a single cause is sufficient, and in this case it was charged by the board that the petitioner should be discharged from his official duties because of his conduct. The conduct then is itemized, to the effect, according to the finding and

statement of the board, that "said Mosier M. Meyer was directly, financially and beneficially interested in said public contracts, contrary to the best interests of the city of Los Angeles, and also contrary to section 28 of the Los Angeles City Charter." This in itself is a sufficient charge upon which to predicate the removal of a public employee. A further analysis of the notice and its attached resolution indicates that other causes than the one itemized above were specified therein; but the entire discussion concerning the causes for discharge becomes academic when we consider that the commission, upon the matter being referred to it, decided that "The grounds stated for the discharge are not proven to the satisfaction of this board by the evidence submitted or obtained; and likewise are not satisfactorily disproven by the testimony of Mosier M. Meyer or by the other testimony and documents relied on by him . . ." This last paragraph reads, as counsel for amicus curiae "All City Employees' Association of Los Angeles" suggests, like a "Scotch verdict." At any rate, there is no finding here on the part of the commission that the grounds stated for petitioner's removal were sufficient or that they were sustained. If petitioner had been able to disprove the grounds stated for his discharge, the commission undoubtedly would have made an entry to that effect, but even though they did not do so, we can say definitely that "the grounds stated for such removal," in the language of the charter, "were insufficient or were not sustained."

However, to reinstate an employee in such a situation, it is necessary that the commission find "in writing, that the person removed . . . *is a fit and suitable person to fill the position from which he was removed* . . ." (Italics added.) Here the petitioner is unfortunate, for the commission, as hereinbefore noted, made its finding, number 2, directly to the contrary and amplified that finding in the closing paragraphs of its resolution.

█ Appellant complains that "The action of the commission in finding or purporting to find that appellant was not a fit and suitable person to be reinstated to his position was arbitrary and unlawful," and that the statement relating to his having been engaged in gambling for high stakes under circumstances which "tended and may yet tend to impair public confidence in him and in the department of street maintenance . . . was and is arbitrary, capricious, fraudulent, wrongful and unlawful." In the brief filed by amicus curiae, it is

argued that the words "fit and suitable," "have a limited meaning and can only refer to information received by the commission during the course of its investigation of the 'cause which shall be stated in writing . . .' and which establishes that the employee affected has become physically or mentally unfit or unsuitable to fill the former position."

"This must be so," it is contended, "otherwise the provisions requiring service of notice setting forth the cause in writing, which is primarily designed for the purpose of giving employees adequate notice of the charges against them and an opportunity to prepare a defense before the commission, would have no meaning or effect." It is further argued that: ". . . this phrase does not come into operation, unless the employee has been acquitted on the original charges. . . . that this phrase as used here has nothing to do with moral delinquencies or offenses, or any connection with grounds of discharge, unless the same were the basis of the original charges set forth in writing in the notice and served on the employee." It is also pointed out that "a person is presumed innocent until proven guilty"; and that ". . . these words have a limited meaning and can only refer to information received by the commission during the course of its investigation of the 'cause which shall be stated in writing . . .' and which establishes that the employee affected has become physically or mentally unfit or unsuitable to fill the former position"; and that ". . . the commission can determine the employee's fitness and suitability only after he has been acquitted of the charges brought against him, the charges set forth in writing, filed and served on him." But in our opinion the determination of what the charter means when it says "fit and suitable" depends upon the rules commonly applicable to construction and interpretation. In that connection it must be emphasized that the courts are without power to legislate, and all tendencies on the part of the judicial branch of the government to legislate by judicial decision are uniformly frowned upon.

Webster's Dictionary defines the word "fit" as "suitable to a standard of duty, propriety or taste," and the same authority furnishes "fit" as a synonym for "suitable." To us the very definition of the word "fit" indicates that there are few words in our language that have a broader significance and since the Los Angeles Charter does not specify that the employee must be found fit and suitable mentally and physically to fill the position from which he was removed

we cannot give the words the special and restricted application which is suggested.

As to the presumption of innocence mentioned by counsel it may be said that the rule has no application to the issues here involved.

In answer to the arguments of appellant's counsel and of the friend of the court, respondents call our attention to the fact that the charter itself, adopted by the people of Los Angeles, constitutes the board of civil service commissioners a tribunal to determine upon an investigation, such as transpired in this case, not only whether or not the stated cause of removal is sufficient or sustained, but also whether the employee is fit and suitable to fill the position in which he seeks to be retained. It is claimed that this is a matter committed to the discretion of the board of civil service commissioners, and since it has unquestioned jurisdiction, and has made its investigation and findings thereon, its order is "final and conclusive," as provided by the charter.

It does not appear that the order of the commission was based on any prejudice against appellant, for, so far as the record indicates, he was given a fair and adequate hearing by the commission which found on the one hand that the charges against him were not proven and that he was not incompetent to perform the duties of the position which he had held, but on the other hand made the adverse finding upon the evidence before it as to fitness and suitability which bars appellant from reinstatement. Paragraph "2" of the commission's resolution recites, as will be noticed, that the petitioner in his own behalf presented testimony from which the commission concluded that he habitually engaged in gambling for high stakes over a period of years under circumstances which tended and may yet tend to impair public confidence in him and in his department. We do not know exactly what testimony appellant presented to the commission but he did attach to his petition a document concerning which, in his petition, he made the following statement: ". . . all of the evidence submitted to said respondent board of civil service commissioners or obtained by it during the course of the investigation conducted by said respondent Board concerning the gambling indulged in by petitioner, the reputation of petitioner and the confidence which his superiors and the public had in petitioner and in the department of street maintenance, bureau of engineering, department of

public works of the city of Los Angeles, is attached hereto, marked Exhibit "F" and hereby referred to and by such reference made a part hereof." Exhibit "F," it appears from its caption, is the "Statement of Mosier Meyer, Taken in the Office of the District Attorney (of Los Angeles County) on October 24, 1934." Excerpts are as follows: "People who know me, know that I gamble quite a lot. It won't be hard to verify. . . . I have won as much as $1500 in one pot, just one pot. . . . I carry around, or have carried around until I practically wore them out, I.O.U.'s to the extent of about $5,000 in my pocket. . . . only time I ever played with Mr. Moore was pretty close to seven years ago, when the contractors had a room in this building at First and Spring, on the second floor, there used to be a poker game there, and I sat in the game several times and Tom Moore was working for the Consolidated Rock Co. at that time. . . . Q. Now, your winnings at cards, how do you get paid off when you win at cards. A. Cash money as a rule, sometimes a check, sometimes I.O.U.'s which is not always very good. . . . Q. During the last few years, you have deposited quite a little money? A. Deposited and drew out, etc. Q. For example, in August of 1932, you deposited $1500 in cash? A. Possible. Q. Even in your league, that is a lot of money. I mean, a man in your station in life, associating with the people you associate with, and considering the stakes that you play for at cards, $1500 is still not a drop in the bucket for you? A. Well, it is not a very substantial sum. I have made more than that on a real estate deal. Q. Well, I will just itemize some of these, Mr. Meyer. Starting back in January, of 1931, you deposited $116 in cash. That is not very much. In April of 1931, you deposited, on April 7, $200, and on the 22nd, $100. All in cash. June, 1931, $225, again in June, $200, and again, $100, making in that month alone $525. A. I must have been doing pretty good that month. . . . Q. In January of 1932, $1100; in May, $1550; June, $1025; July, $500; September, $1500; January, 1933, $1000, etc. Making a considerable amount of money, I should say, roughly speaking, about $15,000 in less than three years, aside from your city warrants and aside from your salary checks, this in cash money of the realm. Real sheckels. Let's figure here. Giving you by far the benefit of the doubt, your income from those two houses would be $2500, and your explanation is that there was about $12,000 that you won in gambling? A. I could

not say that because I have done some other things beside. . . . Q. All we can account for is about $2500, roughly speaking, from rents, and that leaves a balance of $12,000 that we would have to charge to what you won in gambling? A. There is one more thing to clarify that slightly, that is I may have made a little money that I don't recall at this moment, that I will recall, that might be inconsiderable in amount as toward that sum, but that amount of money I would say was all my poker games—I have won more money than that. Q. In the last three years playing poker? A. Yes I really have.'' The recitals in this document presented to the court by the petitioner himself as part of the pleadings in the case furnish a sufficient answer to the argument of his counsel that the action of the board of civil service commissioners constituted, not an exercise of discretion, but an abuse of discretion. The excerpts quoted and other statements contained in Exhibit F demonstrate to our satisfaction that the finding by the commission that petitioner's gambling for high stakes under circumstances which tended and may yet tend to impair public confidence in him and in the department of street maintenance was not, as appellant claimed, in paragraph VIII of his petition, ''arbitrary, capricious, fraudulent, wrongful and unlawful.'' This claim and other adjectival descriptions of the action and decision of the commission constitute merely conclusions of law, on the part of the appellant, the truth of which were not admitted by the general demurrer filed by respondents. (See *Jones* v. *O'Toole,* 190 Cal. 252, 255 [212 Pac. 9] ; *Kelley* v. *Kingsbury,* 210 Cal. 37, 39 [290 Pac. 885] ; *Buttner* v. *Kasser,* 19 Cal. App. 755, 758 [127 Pac. 811].) We are of the opinion that the trial court, in considering and sustaining the demurrer, under the circumstances here presented, did not err. And no error arose because the order was made ''without leave to amend,'' for no application or request was made by the petitioner to amend his pleading. (*Haddad* v. *McDowell,* 213 Cal. 690 [3 P. (2d) 550].) On the contrary, the record shows as we have indicated, that he declined to amend. Since in our judgment there was no abuse of discretion on the part of the commission, application of the principle referred to in *Brown* v. *Board of Police Commissioners,* 2 Cal. App. (2d) 245 at page 251 [37 P. (2d) 737], is decisive of this appeal. As stated in *Boyd* v. *Pendegast,* 57 Cal. App. 504, at page 508 [207 Pac. 713], where an investigation of charges against a removed police officer was made by the board of police com-

missioners, to which that duty was assigned by the charter of the city of Los Angeles, "When such a hearing has been had, the decision, by the very terms of the charter, is placed beyond the reach of any review by the courts." See, also, *Nider* v. *City Commission,* 36 Cal. App. (2d) 14 [97 P. (2d) 293] ; *Souder* v. *City of Philadelphia,* 305 Pa. 1 [156 Atl. 245, 77 A. L. R. 610].)

The judgment is affirmed.

YORK, P. J., concurred.

DORAN, J., Concurring.—I concur in the judgment.

It is my opinion that courts, in proper cases, may legally afford relief by mandamus from wrongs that are the product of fraudulent or arbitrary action of administrative bodies. But mandamus will not lie for the purpose of, nor may courts by resort to such procedure undertake to control or direct administrative boards by, inquiring into the wisdom of their official action. Such problems, although they present opportunity for honest differences of opinion, raise no judicial questions. An allegation of fraud or of arbitrary action, in my opinion, is a necessary element to an action in mandamus under such circumstances.

The briefs on appeal on the part of both the appellant and respondents create confusion by disregarding the sole issue. The appellant states the question involved as follows: "Was the appellant lawfully removed from the position of Superintendent of Street Maintenance, Bureau of Engineering, Department of Public Works of the City of Los Angeles?" The respondents, on the other hand, under the heading "Respondents' Position on This Appeal," assert the following: "Respondents argue, on this appeal: 1. That the order of the Civil Service Commission refusing to reinstate appellant is made final and conclusive, pursuant to the provisions of section 112 of the charter, and is therefore not subject to review by the courts. 2. That even though the civil service commission found that the grounds of removal were neither proven nor disproven, nevertheless it must, in order to reinstate appellant, further find him to be a fit and suitable person to fill the position from which he was removed."

Both positions are entirely beside the issue, and all of the briefs discuss subjects entirely beyond the sole issue involved

in the appeal. That issue concerns only the sufficiency of the petition. The prevailing opinion, which follows the briefs, necessarily falls into the same category. For example, the prevailing opinion contains the following: "It does not appear that the order of the commission was based on any prejudice against appellant, for, so far as the record indicates, he was given a fair and adequate hearing by the commission which found on the one hand that the charges against him were not proven and that he was not incompetent to perform the duties of the position which he had held, but on the other hand made the adverse finding upon the evidence before it as to fitness and suitability which bars appellant from reinstatement." In my judgment, the determination of such questions on appeal has no bearing on the sufficiency of the pleadings.

Appellant elected to stand on the petition as presented, and declined to amend. I am in accord with that part of the prevailing opinion which holds in substance and effect that the allegation of fraud was a conclusion and therefore was insufficient. It follows that the demurrer properly was sustained.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1942.